J. A32033/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEROME SHERWIN GRIER, | : | |
| | : | |
| Appellant | : | No. 1429 EDA 2013 |

Appeal from the Judgment of Sentence April 24, 2013
In the Court of Common Pleas of Chester County
Criminal Division No(s).: CP-15-CR-0001348-2011

BEFORE: PANELLA, OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:        **FILED OCTOBER 15, 2015**

Appellant, Jerome Sherwin Grier,[1] appeals from the judgment of

sentence entered in the Chester County Court of Common Pleas following a

jury trial and convictions for nine counts of possession with intent to deliver[2]

("PWID"), nine counts of possession of a controlled substance,[3] forty-two

counts of criminal solicitation,[4] fifteen counts of criminal use of a

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant was tried with co-defendant Khye Rivas, whose appeal is docketed at 2621 EDA 2013.

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(16).

[4] 18 Pa.C.S. § 902(a).

communication facility,[5] one count of criminal conspiracy,[6] and six counts of dealing in proceeds of unlawful activities.[7] Appellant contends the trial court should have granted his motion to suppress the wiretapped recordings of his telephone conversations as they exceeded the scope of the orders authorizing the wiretaps, erred by permitting the introduction of evidence of drugs and drug sales not relevant to Appellant, and improperly sentenced him. We affirm Appellant's convictions, but vacate the judgment of sentence and remand for resentencing.

We glean the facts from the record, including the trial court's opinion:[8]

> The criminal charges in this case arose as a result of a lengthy multi-agency police investigation . . . . The investigation included wiretap authorization orders issued by the Superior Court and the compilation of thousands of intercepted communications regarding the purchasing, selling and transferring of drugs and money. This investigation resulted in [Appellant's] arrest as well as the arrest of fifteen other defendants who were involved in this drug trafficking organization.

Trial Ct. Op., 8/28/13, at 1.

---

[5] 18 Pa.C.S. § 7512(a).

[6] 18 Pa.C.S. § 903(c).

[7] 18 Pa.C.S. § 5111(a)(1).

[8] We state the facts in the light most favorable to the Commonwealth, as Appellant challenges, *inter alia*, whether his motion to suppress should have been granted. **See generally Commonwealth v. Landis**, 89 A.3d 694, 702 (Pa. Super. 2014).

The order authorizing the wiretap of Phillip DiMatteo, the ringleader of the drug organization, did not identify Appellant. The affidavit in support of the Commonwealth's wiretap application, however, mentioned Appellant:

29. The following is a result of toll analysis [of DiMatteo's telephone number] from December 7, 2009 through March 2, 2010, as well as pen register analysis from January 26, 2009 through March 2, 2010, are set forth below.

* * *

d. Telephone Number (610) 466-0889

Subscriber        KL Bugg
                  808 Lumber Street
                  Coatesville, PA 19320

During the period of December 9, 2009 through March 2, 2010, there were  total of 166 calls, 100 incoming calls and 6 [sic] outgoing calls associated to telephone facility (610) 466-0889. The telephone is subscribed to KL Bugg.

i. A Pennsylvania Department of Transportation check for this address and listed subscriber resulted in no information being found. Your affiants also conducted various checks for KL Bugg and 808 Lumber Street, but no information was found on both the name and address. On 02/02/2010, [Appellant] was stopped by the Coatesville Police Department. At the time of this encounter, [Appellant] provided officers with his current address, 808 Lumber Street, Coatesville, PA 19320. A criminal history check and information obtained from Chester County investigators revealed that [Appellant] uses the date of birth of 03/21/1971. [Appellant] has been issued Pennsylvania State Identification Number #195-59-00-9 FBI# 903384LA9. The following is information obtained from a Criminal History Information check from NCIC: (National Crime Information Center): On 04/20/1990, [Appellant] was arrested by Caln Township Police Department for CSDDCA (possession and possession with intent) violations and sentenced to County probation and

County prison 11-23 months incarceration. On 08/10/1995, [Appellant] was arrested by the Coatesville Police Department for CSDDCA (possession) violations and sentenced to one year County probation. On 08/09/1997, [Appellant] was arrested by Coatesville Police Department for CSDDCA (possession) violations and resisting arrest ([Appellant] plead [sic] guilty and was sentenced to 6-12 months incarceration). On 11/25/2001, [Appellant] was arrested by Coatesville Police Department for CSDDCA (possession with intent) violations and sentenced to 3-6 years State Prison. On 02/02/2010 [Appellant] was arrested by the Coatesville Police Department for CSDDCA (possession) violations (disposition unreported due to charges just being filed, a preliminary hearing is scheduled for March 24, 2010).

Ex. A to Appl. for an Order Authorizing the Interception of Electronic and Wire Commc'ns, at ¶ 29(d); **accord** Commonwealth's Trial Ex. 2; Commonwealth's Brief at 13-14.[9]  In addition to the wiretaps, the police conducted extensive surveillance.

With respect to Appellant, the police intercepted numerous calls to DiMatteo soliciting drugs. **See, e.g.**, N.T. Trial, 1/10/13, at 91; Ex. C-36.[10] Surveillance footage captured Appellant entering DiMatteo's residence on multiple occasions to obtain the drugs. **See, e.g.**, N.T. Trial, 1/10/13, at 91, 101. The police testified about numerous conversations between Appellant

---

[9] It appears the order sealing the affidavit was lifted.  Moreover, the affidavit was accepted by the trial court as an exhibit and the Commonwealth quoted paragraph 29(d) in its brief, each of which was not filed under seal.

[10] Commonwealth's Exhibit C-36 is a three-ring binder with over three hundred pages of transcribed calls over a period of three months between DiMatteo and Appellant or co-defendant Khye Rivas.

and DiMatteo regarding various drug transactions. *See, e.g.*, *id.* at 192-94.

After a seven-day jury trial and four hours of deliberation, the jury found Appellant guilty of the above crimes.

On April 24, 2013, the court sentenced Appellant to an aggregate total of fourteen and three-quarters to twenty-nine and one-half years' imprisonment. Those sentences included, *inter alia*, eight mandatory minimum sentences based upon eight convictions for possession with intent to deliver more than ten grams of cocaine each. Appellant did not file a post-sentence motion. He timely appealed on May 15, 2013, and filed a timely court-ordered Pa.R.A.P. 1925(b) statement. Appellant also filed an untimely, supplemental Rule 1925(b) statement challenging the legality of his sentence pursuant to **Alleyne v. United States**, 133 S. Ct. 2151 (2013).

Appellant raised the following issues:

> Did the trial court err in failing to suppress the recordings of the Appellant's phone conversations when the seizure of those conversations was a material deviation from the authorizing orders of the Superior Court?

> Did the trial court err in allowing irrelevant and unfairly prejudicial evidence of drugs and drug sales which were not directly linked to the Appellant?

> Did the trial court violate the Appellant's rights to due process and to a jury trial by raising the sentencing floor without having the jury determine the weight of the drugs in question?

Did the trial court err in denying the Appellant a Recidivism Risk Reduction Initiative (RRRI) minimum sentence based on his adjudication for resisting arrest?

Appellant's Brief at 5.

In support of his first issue, Appellant argues that the Commonwealth, in its application for a wiretap of DiMatteo's telephone, averred that he called DiMatteo 166 times. *Id.* at 20. Appellant reasons, therefore, that his identity was "known" under 18 Pa.C.S. § 5712(a)(2), and thus, the Commonwealth should have named him in the order authorizing the wiretap of DiMatteo's telephone. *Id.* Appellant contends that because the Commonwealth failed to comply with Section 5712(a)(2), the court should have suppressed the recorded conversations under Section 5721.1(b)(4), as the interception materially deviated from the order authorizing the wiretap. *Id.* at 27. We conclude Appellant is due no relief.

The standards governing a review of an order denying suppression motion are well settled:

We are limited to determining whether the lower court's factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. We may consider the evidence of the witnesses offered by the Commonwealth, as verdict winner, and only so much of the evidence presented by the defense that is not contradicted when examined in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court were erroneous.

*Landis*, 89 A.3d at 702 (citation omitted).[11] We can also affirm on any basis. ***Commonwealth v. Clouser***, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).

Section 5712 authorizes the issuance of a wiretap and states in pertinent part:

> **(a) Authorizing orders.—**An order authorizing the interception of any wire, electronic or oral communication shall state the following:
>
> \* \* \*
>
> (2) The identity of, or a particular description of, the person, if known, whose communications are to be intercepted.

18 Pa.C.S. § 5712(a)(2).

Section 5721.1 identifies the limited bases upon which a defendant may exclude an intercepted conversation and the exclusive nature of the relief:

> **(b) Motion to exclude.—**Any aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds:
>
> \* \* \*

---

[11] We acknowledge the holding of ***In re L.J.***, 79 A.3d 1073 (Pa. 2013), that after October 30, 2013, the scope of review for a suppression issue is limited to the record available to the suppression court. ***Id.*** at 1085, 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision"). Because the instant criminal complaint was filed prior to October 30, 2013, ***In re L.J.*** does not apply.

> (3) The order of authorization issued under section 5712 is materially insufficient on its face.
>
> *   *   *
>
> **(e) Exclusiveness of remedies and sanctions.—**The remedies and sanctions described in this subchapter with respect to the interception of wire, electronic or oral communications are the only judicial remedies and sanctions for nonconstitutional violations of this subchapter involving such communications.

18 Pa.C.S. § 5721.1(b)(3), (e). "[T]he Supreme Court of Pennsylvania has held that suppression of evidence is an inappropriate remedy except where suppression is necessary to protect fundamental constitutional rights." **Commonwealth v. Doty**, 498 A.2d 870, 886 (Pa. Super. 1985) (citations omitted). In other words, "grounds for suppression based on nonconstitutional violations of the Wiretap Act are limited to incriminating evidence resulting from a wiretap based on an interception which was unlawful or otherwise conducted in contravention of the judicial order, or because the judicial order was insufficient on its face." **Commonwealth v. Donahue**, 630 A.2d 259, 279 (Pa. Super. 1993) (footnote omitted).

In **Commonwealth v. Whitaker**, 546 A.2d 6 (Pa. 1988), the defendant sought to suppress wiretapped conversations on the basis that the wiretap order did not identify him, as set forth in Section 5712(a)(2). **Id.** at 8. In that case, the suppression court refused to suppress the intercepted communications, reasoning

that the foregoing statutory provision does not require that a person be named in a wiretap application unless there is probable cause to believe that such person's communications will be intercepted. On the basis that probable cause was lacking with respect to appellant, the suppression court ruled that the evidence against appellant need not be suppressed.

*Id.* Our Supreme Court agreed, reasoning the statute "expressly limits the situations in which individuals are to be specified by name in an application, to wit, requiring identification of individuals who are 'known,' and who are 'committing the offense,' and only when it can be said that the individuals' communications 'are to be intercepted.'" *Id.* The focus is on whether the Commonwealth has probable cause:[12]

> [U]nless probable cause is present, an interception order cannot be issued. It follows, therefore, that an application for an interception order should not name as targets individuals with respect to whom probable cause is lacking.
>
> Clearly, an applicant for a wiretap cannot be expected to name persons whose communications "**are** to be

---

[12] The *Doty* Court discussed the framework for identifying the existence of probable cause:

> The standard for determining whether probable cause existed is the same as that used to determine cause for search warrants. . . . [I]n an application for a wiretap, the Commonwealth must establish probable cause to believe that (1) a person has or is about to commit one of the offenses enumerated in the statute, (2) that communications relating to that offense will be transmitted, and (3) that such communications will be intercepted on the facility under surveillance.

*Doty*, 498 A.2d at 882 (citations omitted).

intercepted," 18 Pa.C.S. § 5709(3)(i), *supra* (emphasis added), when there are no probable grounds to believe such communications will be intercepted. To require that every person whose communications are in fact intercepted have been named in an interception order would require a high degree of omniscience indeed, obviously not intended as an element of wiretapping prerequisites.

*Id.* at 8-9.[13] Applying these precepts to the facts, the *Whitaker* Court held that suppression was not justified because, *inter alia*,

[t]here was no evidence of knowledge by investigating authorities that [the defendant] had ever communicated on the phone lines that were to be tapped. Nor was there any indication that [the defendant] would **continue** to engage in [criminal] activities with [one of the individuals whose communications were to be intercepted] and begin utilizing the intercepted lines.

*Id.* at 9-10.

Instantly, similar to *Whitaker*, the Commonwealth lacked knowledge that Appellant—and not KL Bugg—was communicating with DiMatteo. *Cf. Whitaker*, 546 A.2d at 9-10. While the Commonwealth was aware that Appellant provided an address matching the address for KL Bugg and Appellant had an extensive criminal history for drug violations, nothing of record establishes the Commonwealth's knowledge that Appellant was using

---

[13] The *Whitaker* Court approvingly cited *United States v. Kahn*, 415 U.S. 143 (1974), in which "it was held that the naming of an individual in an application for an interception order is necessary only when investigating authorities have **probable cause** to believe that the individual whose communications are to be intercepted is committing the offense for which the wiretap is sought." *Whitaker*, 546 A.2d at 8.

that telephone number to speak with DiMatteo and that the 166 calls related to the offenses at issue. *Cf. id.* at 8-10 (citing *Kahn*, 415 U.S. at 155); *Doty*, 498 A.2d at 882. Accordingly, we discern no basis for relief and affirm the trial court's disposition of this issue, albeit on other grounds. *See Clouser*, 998 A.2d at 661 n.3.

In support of his second issue, Appellant contends the trial court abused its discretion by permitting the introduction of evidence about the DiMatteo drug enterprise. Appellant objects to, *inter alia*, the introduction of an organizational chart detailing DiMatteo's drug enterprise and a bag of cocaine briefly displayed to the jury. *See* N.T. Trial, 1/8/13, at 135; N.T. Trial, 1/9/13, at 185. The cocaine was seized in a transaction not connected to Appellant and was used by the Commonwealth to establish DiMatteo "was a big drug dealer." N.T. Trial, 1/9/13, at 186. Appellant challenges the Commonwealth's use of such evidence as background on DiMatteo and how it led to the instant charges. We decline to grant relief to Appellant.

The standard of review follows:

> The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Further, an erroneous ruling by a trial court on an evidentiary issue does not require us to grant relief where the error is harmless.
>
> An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless.

***Commonwealth v. Northrip***, 945 A.2d 198, 203 (Pa. Super. 2008)

(citation and formatting omitted).

After careful review of the parties' briefs on this issue, the record, and

the decision of the Honorable Phyllis R. Streitel, we affirm this issue on the

basis of the trial court's decision. ***See*** Trial Ct. Op., 8/28/13, at 17-21

(holding court gave extensive cautionary instructions on multiple occasions

with respect to admitted evidence and jury presumed to heed such

instructions). Even presuming the court erred, we would hold such error

harmless given the extensive intercepted communications inculpating

Appellant. ***See Northrip***, 945 A.2d at 203.

For his third issue, Appellant challenges the legality of his sentence.[14]

Specifically, he claims that because the jury never determined the weight of

the cocaine at issue, the court erred by imposing the mandatory minimum

sentences. We hold Appellant is entitled to relief.

In ***Commonwealth v. Dixon***, 53 A.3d 839 (Pa. Super. 2012), this

Court set forth the following standard of review:

> Application of a mandatory sentencing provision
> implicates the legality, not the discretionary, aspects of
> sentencing. In reviewing the trial court's interpretation of

---

[14] We acknowledge that Appellant raised this issue in an untimely supplemental Rule 1925(b) statement. It is well settled, however, that a challenge to the legality of a sentence generally cannot be waived on direct appeal. ***See Commonwealth v. Gibbs***, 981 A.2d 274, 284 (Pa. Super. 2009).

> statutory language, we are mindful of the well-settled rule that statutory interpretation implicates a question of law. Thus, our scope of review is plenary, and our standard of review is *de novo*.

***Id.*** at 842 (citations and some punctuation omitted).

Recently, in a series of cases, this Court has held that mandatory minimum sentences imposed under certain subsections of 18 Pa.C.S. § 7508 were illegal. ***See Commonwealth v. Mosley***, ___ A.3d ___, 2015 WL 1774216, at *15 (Pa. Super. Apr. 20, 2015) (vacating mandatory minimum sentence imposed under subsection 7508(a)(3)(ii)); ***Commonwealth v. Cardwell***, 105 A.3d 748, 755 (Pa. Super. 2014) (concluding trial court erred by imposing mandatory minimum sentence under subsection 7508(a)(4)(i)); ***Commonwealth v. Fennell***, 105 A.3d 13, 20 (Pa. Super. 2014) (vacating mandatory minimum sentence imposed per subsection 7508(a)(7)(i)); ***Commonwealth v. Thompson***, 93 A.3d 478, 493 (Pa. Super. 2014) (holding mandatory minimum sentence under subsection 7508(a)(2)(ii) was illegal). Instantly, given the ***Mosley*** Court vacated a mandatory minimum sentence imposed under subsection 7508(a)(3)(ii)—the subsection at issue in the instant case—and the ***Thompson*** Court opined on a subsection structurally identical to the one used to sentence Appellant, we similarly vacate his sentence and remand for resentencing. ***See Mosley***, ___ A.3d at ___, 2015 WL 1774216, at *15; ***cf. Thompson***, 93 A.3d at 494.

Appellant lastly contends the trial court erred in finding him ineligible for a RRRI sentence. Appellant's Brief at 37. The trial court, in its Pa.R.A.P. 1925(a) opinion, concludes Appellant's prior conviction for resisting arrest demonstrated a "history of past violent behavior" rendering him ineligible for as RRRI sentence under 61 Pa.C.S. § 4503(1). Trial Ct. Op. at 27. The court observes no Pennsylvania case law exists on the "exact issue." *Id.* at 26. However, it suggests the reasoning of the United States Court of Appeals for the Third Circuit that Pennsylvania's resisting arrest statute constitutes "a crime of violence" is persuasive authority. *Id.* at 26-27 (citing *United States v. Stinson*, 592 F.3d 460 (3d Cir. 2010)).

Appellant argues "it can be inferred" the General Assembly did not intend a prior conviction for resisting arrest to disqualify him from a RRRI sentence. Appellant's Brief at 38. In support, he observes the RRRI Act does not enumerate resisting arrest as a *per se* disqualifying offense and relies on the "common law maxim, *expressio unius est exclusio alterius*." *Id.* (quoting *Commonwealth v. Hansley*, 994 A.2d 1150, 1157 n.3 (Pa. Super. 2010)). Appellant further asserts the trial court erred in relying on federal case law interpreting the federal statutes and sentencing guidelines. *Id.* at 37.

The Commonwealth responds the trial court properly found resisting arrest demonstrates a "'violent behavior'" under Section 4503(1). Commonwealth's Brief at 35. The Commonwealth reasons resisting arrest

"involves a substantial risk of bodily injury" and suggests resisting arrest is equivalent to "crimes of violence" under Pennsylvania's recidivist sentencing statute.[15]    **Id.** at 39-40 (citing 42 Pa.C.S. § 9714(g)).    Lastly, the Commonwealth asserts Appellant's reliance on the principle of *expressio unius est exclusio alterius* is frivolous.   **Id.** at 40.   For the reasons that follow, we conclude a conviction for resisting arrest does not, as a matter of Pennsylvania law, impute "violent behavior" for the purposes of RRRI eligibility.  Accordingly, Appellant is entitled to partial relief.

As set forth in **Hansley**: "The issue in this appeal involves statutory construction, which is a question of law; thus, our review is plenary.  In interpreting statutes, we are guided by the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, as well as our decisional law."[16]    **Id.** at 1185 (citation omitted); **Braun v. Wal-Mart Stores, Inc.**, 24 A.3d 875, 953 (Pa. Super. 2011) (*per curiam*), *aff'd*, 106 A.3d 656 (Pa. 2014).

---

[15]   Relatedly, the Commonwealth argues because resisting arrest demonstrates "violent behavior" under Section 4503(1), Appellant's pending charges of resisting arrest would also disqualify him from eligibility under Section 4503(5).  Commonwealth's Brief at 41.

[16] Moreover, although RRRI eligibility falls in the hazy area between "non-waivable illegal sentencing matter and waivable legal questions," this Court has previously considered the failure to impose a RRRI sentence as an illegal sentencing matter issue.  **See Commonwealth v. Tobin**, 89 A.3d 663, 669-70 (Pa. Super. 2014); **Commonwealth v. Robinson**, 7 A.3d 868, 871 (Pa. Super. 2010).  Thus, the failure to impose a RRRI sentence "is subject to *sua sponte* correction[,]" and our standard and scope of review is *de novo* and plenary.  **Tobin**, 89 A.2d at 669-70; **Commonwealth v. Barbaro**, 94 A.3d 389, 391 (Pa. Super. 2014).

> When considering statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." If the words of a statute are clear and unambiguous, we should not look beyond the plain meaning of the statutory language "under the pretext of pursuing its spirit." Accordingly, only when the words of a statute are ambiguous should a reviewing court seek to ascertain the intent of the General Assembly through consideration of the various factors found in Section 1921(c).

**Commonwealth v. Chester**, 101 A.3d 56, 62-63 (Pa. 2014) (ciations omitted).

Section 4503 of the RRRI Act defines "eligible offender" in relevant part as follows:

> A defendant or inmate convicted of a criminal offense who will be committed to the custody of the department and who meets all of the following eligibility requirements:
>
> > (1) Does not demonstrate a history of present or past violent behavior.
>
> > *   *   *
>
> > (3) Has not been found guilty of or previously convicted of or adjudicated delinquent for or an attempt or conspiracy to commit a personal injury crime as defined under section 103 of the act of November 24, 1998 (P. L. 882, No. 111),[ ] known as the Crime Victims Act, except for an offense under 18 Pa.C.S. § 2701 (relating to simple assault) when the offense is a misdemeanor of the third degree, or an equivalent offense . . . .
>
> > *   *   *
>
> > (5) Is not awaiting trial or sentencing for additional criminal charges, if a conviction or sentence on the additional charges would cause the defendant to become ineligible under this definition.

61 Pa.C.S. § 4503(1), (3), (5). As referenced in Section 4503(3), a "personal injury crime" includes "[a]n act, attempt or threat to commit an act that would constitute a misdemeanor or felony under . . . 18 Pa.C.S. Ch. 27 (relating to assault)."[17] *See* 18 P.S. § 11.103.

In ***Chester***, the Pennsylvania Supreme Court resolved whether a conviction for first-degree burglary[18] demonstrates "violent behavior" under

---

[17] Other "personal injury crimes" include offenses under Chapters 25 (homicide), 29 (kidnapping), 31 (sexual offenses), 37 (robbery), and 49 Subchapter B (victim and witness intimidation) of the Crimes Code. Additionally, 18 Pa.C.S. § 3301 (arson) and several provisions relating to the operation of a watercraft or motor vehicle constitute "personal injury crimes." 18 P.S. § 11.103.

[18] The defendant in ***Chester*** was charged under the following version of the burglary statute:

> **(a) Offense defined.**—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.
>
> * * *
>
> **(c) Grading.—**
>
> (1) Except as provided in paragraph (2), burglary is a felony of the first degree.
>
> (2) If the building, structure or portion entered is not adapted for overnight accommodation and if no individual is present at the time of entry, burglary is a felony of the second degree.

Section 4503(1) as a matter of law.[19] ***Chester***, 101 A.3d at 57. The

***Chester*** Court initially observed that "the RRRI Act does not define what

constitutes a 'history of present or past violent behavior.'" ***Id.*** at 58. The

Court, however, noted Section 4503(2)-(6) enumerates crimes "that render

an offender ineligible to receive a reduced minimum sentence . . . ." ***Id.*** at

63.[20] Although burglary is not included as a *per se* disqualifying crime, the

Court construed "Section 4503(1) as a broad, 'catchall' provision" that

covered "violent behaviors not otherwise identified in the RRRI Act's

definition of 'eligible offender.'" ***Id.***

The ***Chester*** Court held first-degree burglary convictions render a

defendant ineligible to receive an RRRI-reduced minimum sentence under

Section 4503(1). ***Id.*** at 65. The Court reviewed the treatment of the

---

***Chester***, 101 A.3d at 58 n.1 (quoting 18 Pa.C.S. § 3502(a), (c)(1)-(2) (1990)).

As noted by the ***Chester*** Court, this Court previously held that second-degree burglary did not constitute "violent behavior" under 61 Pa.C.S. § 4503(1) because "illegal entry into an unoccupied structure, does not involve the risk of violence or injury to another." ***Id.*** at 59 (discussing ***Commonwealth v. Gonzalez***, 10 A.3d 1260 (Pa. Super. 2010)). The ***Chester*** Court did not address whether second-degree burglary constitutes "violent behavior" under the RRRI Act. ***Id.*** at 60 n.7.

[19] Neither the parties nor the trial court had the benefit of ***Chester***, which was decided while this appeal was pending.

[20] The ***Chester*** Court noted the *per se* exclusions include "offenses involving deadly weapons in Section 4502(2); personal injury crimes enumerated under Section 103 of the Crime Victims Act in Section 4503(3); certain sexual offenses in Section 4503(4); and specific drug offenses in Section 4503(6)." ***Chester***, 101 A.3d at 60-61 (footnote omitted).

offense at law, as well as the structure and language of the burglary statute. *See id.* at 64-65. Specifically, the Court reasoned that "it is well established within our case law that '[b]urglary is a crime of violence as a matter of law[.]'" *Id.* at 64. It observed, "burglary has been treated as a crime of violence dating back to the common law of England, which . . . punished burglars with death '[b]ecause of the great public policy involved in shielding the citizenry from being attacked in their homes and in preserving domestic tranquility." *Id.* at 64. Tracing the treatment of burglary at law, the Court noted the following. "[A]ll burglaries are crimes of violence for the purposes of the significant history of violent felony convictions aggravating circumstance for capital sentence." *Id.* (discussing 42 Pa.C.S. § 9711(d)(9)). Moreover, first-degree burglary is expressly listed as a crime of violence under Pennsylvania's recidivist sentencing statute, as well as a disqualifying offense for boot camp. *Id.* (discussing 42 Pa.C.S. § 9714(g) and 61 Pa.C.S. § 3903).

The *Chester* Court further reviewed the text of the burglary statute and discerned a distinction between first- and second-degree offenses, "as first-degree burglary contemplates the potential for confrontation, whereas second-degree burglary does not." *Id.* The Court emphasized a conviction for first-degree burglary imputed a risk of confrontation and violence, because the structure invaded was either adapted for overnight use or an individual was present at the time of entry. *Id.* at 65.

Of note, the **Chester** Court, in holding that Section 4503(1) encompasses all "'violent behavior' **in addition to** the enumerated crimes contained in Section 4503(2)-(6)[,]" specifically rejected the defendant's suggestion to apply the maxim of *expressio unius est exclusio alterius*. **Id.** at 63. Furthermore, the Court dismissed the defendant's argument that his prior burglaries did not involve violent behavior, concluding: "it is an offender's non-privileged entry, which 'invit[es] dangerous resistance' and, thus, the possibility of the use of deadly force against either the offender or the victim, that renders burglary a violent crime, not the behavior that is actually exhibited during the burglary." **Id.** (citation omitted).

Mindful of the guidance in **Chester**, we consider whether a prior conviction for resisting arrest[21] falls within the meaning of "violent behavior" under Section 4503(1). Under the common law, obstruction of the execution of lawful process was an offense against public justice and authorized the officer to use force to ensure compliance without fear of civil liability. **See People v. Nash**, 1 Idaho 206, 211-12 (1868);[22] 4 William

---

[21] As noted below, resisting arrest occurs when "[a] person . . . with the intent of preventing a public servant from effecting a lawful arrest . . . creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. The offense is graded as a misdemeanor of the second degree.

[22] The **Nash** Court stated resisting arrest

Blackstone, Commentaries *129, *179. Further, the common law envisioned that resistance to lawful process established malice for murder if the resistance resulted in the officer's death. *Id.*; 4 Blackstone *200-01.

Plainly, the traditional offense of obstruction protects police officers. At the same time, criminalizing resistance channels an individual's behavior toward compliance with an officer's commands and ensures the orderly administration of law. ***Cf. Commonwealth v. Williams***, 496 A.2d 31, 43, 50 (Pa. Super. 1985) (*en banc*) (suggesting crime of assault protects person and resisting arrest protects "time-tested yet fragile social balance whereby our elected representatives provide laws for the good of society, and public officers to execute and enforce them, and under which respect and

> is an offense at common law . . . . Blackstone says: "Obstructing lawful process is at all times an offense of a very high and presumptuous nature, but more particularly so when it is an obstruction of an arrest upon criminal process. And in civil cases resistance will justify an officer in proceeding to the last extremity. So that in all cases, civil or criminal, when persons having authority to arrest or imprison are resisted in so doing while using the proper means for that purpose, they may repel force with force, and need not give back." Officers of justice while in the execution of their offices are under the peculiar protection of the law, and killing them whilst so doing is murder. Note, also, sheriffs, constables, watchman, etc., while in the due execution of their duties, are under the peculiar protection of the law—a protection founded in wisdom and equity—for without it the public tranquillity can not be maintained nor private property secured; nor, in the ordinary course of things, will offenders of any kind be amenable to justice. . . .

*Nash*, 1 Idaho at 211-12 (citations omitted).

obedience shown to officers discharging their lawful duties are as essential to the orderly administration of justice as the laws themselves."). As suggested in **Williams**, however, the principal "injury" attendant resisting arrest is the "administration of law," a view reflected in the continuing requirement that the underlying arrest be lawful to sustain a resisting arrest conviction. **Cf. id.**; **see generally Commonwealth v. Biagini**, 655 A.2d 492, 497-98 (Pa. 1995) (holding conviction for resisting arrest requires underlying arrest be lawful, but unlawful nature of arrest did not preclude conviction for aggravated assault of officer). **But see Commonwealth v. Jackson**, 924 A.2d 618, 621 (Pa. 2007) (upholding resisting arrest conviction where initial attempt to arrest was unlawful, but probable cause arose to arrest defendant for other crimes committed while resisting arrest).

As to the treatment of the offense at law, our review reveals no special consideration given to a conviction for resisting arrest under Pennsylvania statutes. Resisting arrest is not expressly listed as a "crime of violence" for recidivist sentencing purpose,[23] **see** 42 Pa.C.S. § 9714(g), or in any other statute. Nor is it an enumerated crime or aggravating factor in a sentencing

---

[23] We address the Commonwealth's argument that resisting arrest is an equivalent offense under Section 9714(g) below.

or rehabilitative statute.[24] Indeed, it does not *per se* disqualify an individual from possession of a firearm.[25] **See** 18 Pa.C.S. § 6105(b).

The legislative history surrounding the crime of resisting arrest supports a policy distinction between the protection of the officer and the orderly administration of justice. Section 4313 of the former Penal Code, enacted in 1939, and as amended in 1963, contained an offense entitled "Obstructing an Officer in the Execution of Process or in the Performance of His Duties." The statute provided:

> Whoever knowingly, wilfully and forcibly obstructs, resists or opposes any officer or other person duly authorized, in serving or attempting to serve or execute any legal process or order, or in making a lawful arrest without warrant, or assaults or beats any officer or person, duly authorized, in serving or executing any such legal process or order or for and because of having served or executed the same; or in making a lawful arrest without warrant; or rescues another in legal custody; or whoever being required by any officer, neglects or refuses to assist him in the execution of his office in any criminal case, or in preservation of the peace, or in apprehending and securing any person for a breach of the peace, is guilty of a misdemeanor, and on conviction, shall be sentenced to

---

[24] For example, the Pennsylvania Sentencing Guidelines assigns resisting arrest an offense gravity score of two. 204 Pa. Code § 303.15. General obstruction of the administration of law under 18 Pa.C.S. § 5101 carries an offense gravity score of three. **Id.**

[25] 18 Pa.C.S. § 6105(b) lists disqualifying offenses prohibiting a person from possession of a firearm, and includes all burglaries, as well as several potential misdemeanor offenses, such as 18 Pa.C.S. § 5121 (escape) and 18 Pa.C.S. § 5122 (weapons or implements for escape).

imprisonment not exceeding one year, or to pay a fine not exceeding five hundred dollars ($500), or both.[26]

***Commonwealth v. Anderjack***, 413 A.2d 693, 696 n.5 (Pa. Super. 1979) (quoting 18 P.S. § 4314 (1963)).  In 1963, the General Assembly created a separate felony offense of aggravated assault and battery upon a police officer, which carried a five-year maximum sentence.  ***See*** 18 P.S. § 4314.1 (1963).

Thus, the General Assembly traditionally distinguished misdemeanor resistance and/or assault and battery of an officer, each punishable by one year's imprisonment, from assault and battery punishable by three years' imprisonment, as well as felony aggravated assault of an officer punishable up to five years.  ***See*** 18 P.S. §§ 4314, 4314.1; ***Commonwealth v. Nelson***, 305 A.2d 369, 370-71 (Pa. 1973) (concluding, under former common-law doctrine, that conviction for assault and battery in resisting arrest under Section 4314 merged into assault and battery); ***Williams***, 496 A.2d at 43 (aggravated assault of police officer and resisting arrest did not merge under former principal injury test).

In 1972, the Commonwealth adopted the Crimes Code based upon the Model Penal Code.  The Crimes Codes established "offenses involving danger

---

[26] A substantially similar provision existed since at least 1860.  ***See*** Act 31 March, 1860, P.L. 386, § 8; ***Commonwealth v. Sadowski***, 80 Pa. Super. 496 (1922) (noting that obstruction criminalized failure to assist an officer pursuing suspect and "it would be a strange legal anomaly" to convict citizen obeying officer's order to assist with assault and battery of suspect).

to the persons" in Article B, and "assaults" under Chapter 27, as well as "offenses against Public Administration" in Article E, and crimes obstructing governmental operations in Chapter 51. In addition to the general Chapter 27 offenses protecting the safety and well-being of any person, the former offenses of assault and battery upon a police officer in 18 P.S. § 4314 and aggravated assault and battery upon a police officer in 18 P.S. § 4314.1 were incorporated into Chapter 27. *See* 18 Pa.C.S. § 2702(a)(2), (3), (6) & 1972 Official Cmt. Currently, there are several provisions that specifically protect police officers. *See* 18 Pa.C.S. §§ 2702(a)(2), (3), (6), (7), 2702.1. Those provisions continue the common law tradition of affording special protections to police by, for example, considering "simple" assaults upon police officers as felony aggravated assault. *See* 18 Pa.C.S. §§ 2701, 2702(a)(6); *Commonwealth v. Wertelet*, 696 A.2d 206, 210 n.6 (Pa. Super. 1997); *accord Nash*, 1 Idaho at 212.

Under Chapter 51, the General Assembly broadened the scope of criminal liability for "obstructing administration of law" and distinguished resisting arrest. *Compare* 18 Pa.C.S. §§ 5101, 5104; *with* 18 P.S. § 4314; *see also* 18 Pa.C.S. § 5101, 1972 Official Cmt (noting there was no similar provision to obstruction offense in Section 5101 in existing law). Obstruction constitutes a second-degree misdemeanor for the use of "force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act" with the intent to obstruct, impair, or pervert the

administration of law. 18 Pa.C.S. § 5101. The obstruction statute excludes "flight [or] refusal to submit to arrest." 18 Pa.C.S. § 5101. The intent of the Model Penal Code drafters was "to relegate such conduct to the . . . offense of resisting arrest." Model Penal Code § 242.1, Explanatory Note.

We now turn to the resisting arrest statute at issue in this appeal. Section 5104 of the Crimes Code provides:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, **or** employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104 (emphasis added). Notably, resisting arrest is a second-degree misdemeanor, the same grade as obstruction. Moreover, resisting arrest contains alternative bases for liability, *i.e.*, acts creating a substantial risk of injury or requiring substantial force to overcome. *See Thompson*, 922 A.2d at 928. The use of the term "substantial" is consistent with the 1972 Official Comment that "this section changes existing law somewhat by not extending to minor scuffling which occasionally takes place during an arrest." 18 Pa.C.S. § 5104, 1972 Official Comment. Similarly, the Model Penal Code drafters indicate their suggested "language exempts from liability nonviolent refusal to submit to arrest and such minor acts of resistance as

running from a policeman or trying to shake free of his grasp."[27]  Model Penal Code § 242.1, Explanatory Note for Sections 242.1-242.8.

The creation of a substantial risk of bodily injury to a public servant may fall within the ambit of "violent behavior"[28] under a common understanding of that phrase, under the analytical framework set forth in **Chester**.  **See Chester**, 101 A.3d at 64-65 (noting first-degree burglary viewed as a crime of violence because offender's "non-privileged entry . . . contemplates the potential for confrontation" and "'invit[es] dangerous resistance' and thus the possibility of the use of deadly force" (citations omitted)).  However, this does not end our inquiry, because "passive resistance" requiring substantial force to overcome constitutes an independent basis for resisting arrest.  **See Thompson**, 922 A.2d at 928.  Thus, we consider further the nature of liability under the second element of the resisting arrest statute.

In **Commonwealth v. Clark**, 761 A.2d 190 (Pa. Super. 2000), we sustained a conviction for resisting arrest based on the following:

---

[27] The drafters explained, "The policy judgment underlying this curtailment of coverage is that authorizing criminal punishment for every trivial act of resistance would invite abusive prosecution."  Model Penal Code § 242.1, Explanatory Note.

[28] We note Webster's defines "violent" as: "1: characterized by extreme force : marked by abnormally sudden physical activity and intensity 2: furious or vehement to the point of being improper, unjust, or illegal . . . 4: produced or effected by force . . . ."  Webster's Third New International Dictionary, Unabridged 2554 (1986).

The Carlisle Police responded to a fight in front of the Carlisle Tavern on South Hanover Street, just south of the Courthouse. The defendant was first observed in a crosswalk. He then approached Officer Kevin Roland at which time he was screaming profanity. When Officer Roland attempted to arrest the defendant for disorderly conduct, the defendant avoided arrest by walking backwards and walking in circles. From time to time, the defendant would assume a fighting stance. The officer then sprayed the defendant with pepper spray in an effort to subdue him. The defendant then began running down South Hanover Street in the travel lanes of the roadway. The officer ran after the defendant until Mr. Clark slipped on the wet roadway and fell down. The officer then turned the defendant over onto his stomach and handcuffed him.

*Clark*, 761 A.2d at 191. In light of that record, the *Clark* Court concluded, "substantial force was thus required to overcome [the defendant's] resistance to the arrest." *Id.* at 193-94.

In *Thompson*, the defendant and her husband were involved in an argument with employees and another driver inside a parking garage. *Thompson*, 922 A.2d at 927. Two officers on horseback arrived and the following occurred

Officer Deborah Ewing heard profanities as she approached the garage. Once inside, she observed [the defendant's unoccupied] vehicle by the booth. [The defendant] was standing behind the car, and [the defendant's husband] was shouting at the driver of the other vehicle. When Officer Ewing attempted to get [the defendant's husband] attention by calling and whistling, he began flailing his arms and hitting the officer. While trying to control her horse, Officer Ewing informed [the defendant's husband] that he was under arrest . . . . [The defendant] approached Officer Ewing, yelling and waving her hands in an attempt to scare the horse. [The defendant] hit the horse's nose, causing the animal to rear up.

Officer Canfield then arrived on the scene, dismounted his horse to diffuse the activity among [the defendant], Officer Ewing, and Officer Ewing's horse. As the couple attempted to re-enter their vehicle, Officer Canfield yelled, pushed them against the car, threw them to the ground, and a struggle ensued. [The defendant] and her husband interlocked their arms and legs and refused to respond to Officer Canfield's verbal commands to release their hands. The officers attempted to pry the couple apart to handcuff and place them in custody. After struggling with the officers for a few minutes, [the defendant] was eventually disengaged from Mr. Thompson and handcuffed after pepper spray was deployed.

*Id.* The defendant was convicted of resisting arrest, disorderly conduct, and taunting a police animal. *Id.*

On appeal, the defendant in *Thompson* challenged her resisting arrest conviction and argued "her 'passive' resistance to the officers' attempts to place her in custody belie[d] any intent to strike or use force against them." *Id.* at 928. This Court rejected that argument, relying in part upon *Clark*. Specifically, we observed, "Officer Ewing . . . struggled to pull [the defendant] apart from her husband with whom she interlocked her arms and legs . . . and held her arms tightly beneath him" despite the officers' commands to disengage from her husband. *Id.* We further noted "Officer Canfield testified that his attempts to restrain the couple to place them under arrest left him 'exhausted.'" *Id.* (citation omitted). Thus, the *Thompson* Court concluded the defendant's "use of passive resistance requiring substantial force to overcome provided sufficient evidence for upholding the resisting arrest conviction." *Id.*

This Court's unpublished memoranda, while not precedential, illustrate the grounds for liability under the substantial-force-required element. *See, e.g.*, *Commonwealth v. Royster*, 181 WDA 2015 (unpublished memorandum at 7) (Pa. Super. June 3, 2015) (concluding substantial force required to overcome resistance, when, during lawful arrest for disorderly conduct on bus, defendant grabbed a hand-bar, yelled and struggled, and required "**three** police 'a considerable amount of time' to secure [the defendant's] hands" (emphasis in original)); *Commonwealth v. Patrick*, 1265 WDA 2014 (unpublished memorandum at 8) (Pa. Super. June 1, 2015) (concluding substantial force required to overcome defendant when after officer tackled defendant, defendant refused to show his hands and submit to being handcuffed; officer believed defendant was armed with a hammer; another officer was required to handcuff defendant); *Commonwealth v. Wright*, 2935 EDA 2013 (unpublished memorandum at 10) (Pa. Super. July 1, 2014) (concluding after defendant fled, "the fact that it took two police officer 10 to 15 seconds to place handcuffs on [defendant] meets the statutory language of resistance behavior that took substantial force to surmount").

We are mindful that *Chester* precludes this Court from engaging in a case-by-case analysis of the facts to determine whether a *per se* disqualifying crime imputes violent behavior. *See Chester*, 101 A.3d at 65. Nevertheless, our decisions in *Clark* and *Thompson*, as well as our

continued application of the statute, reveal a resisting arrest conviction may be predicated upon the "substantial" use of force to subdue resistance without an express consideration of a substantial risk of bodily injury. Because the text of the resisting arrest statute does not distinguish between the alternative elements for liability, there is ambiguity as to whether a resisting arrest conviction involves "violent behavior" as a matter of law. ***Cf. id.*** at 64-65. Given this ambiguity, as well as the historical treatment of the crime, a conviction for resisting arrest is not amenable to a *per se* approach when determining ineligibility for "violent behavior" under the RRRI.

We are further mindful of the sound policies discussed by our courts and the federal courts that the essence of resisting arrest is the creation of a substantial risk of bodily injury and thus constitutes a "crime of violence." ***See Stinson***, 592 F.3d at 466; ***Commonwealth v. Miller***, 475 A.2d 145, 146 (Pa. Super. 1984); ***see also United States v. Jones***, 740 F.3d 127, 137 (3d Cir. 2014) (holding misdemeanor conviction for fleeing and eluding under 75 Pa.C.S. § 3733 constituted categorical "crime of violence" under federal sentencing guidelines). However, given the text of Section 5104, and our applications of the statute, it is apparent our courts strictly construe and apply the plain language of the statute. ***Cf.*** 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Thus, we turn to the Commonwealth's argument that even if resisting arrest is not enumerated as disqualifying offense, it is equivalent to other "crimes of violence." Commonwealth's Brief at 39-40 (citing 42 Pa.C.S. § 9714(g)). Section 9714(g) enumerates several *per se* crimes of violence, including, "aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) . . . . assault of law enforcement officer as defined in 18 Pa.C.S. § 2702.1 . . . or an equivalent crime under the laws of this Commonwealth . . . ." 42 Pa.C.S. § 9714(g). However, the Commonwealth relies solely on the policies underlying resisting arrest and fails to acknowledge the significant differences between resisting arrest and assaulting a police officer, including whether injury was caused or attempted, the severity of the injury caused or intended, and the *mens rea* of the offenses.[29] Thus, we discern no basis to conclude that resisting arrest is an equivalent "crime of violence" under Section 9714(g).

Lastly, we consider the trial court's reliance upon federal decisions holding resisting arrest is a "crime of violence." Under the federal sentencing guidelines, a defendant is considered a "career offender" if in relevant part he has "at least two prior felony convictions of . . . a crime of

---

[29] **Compare** 18 Pa.C.S. § 5104 (requiring intent to prevent lawful arrest and either creating substantial risk of bodily injury or requiring substantial force to overcome), **with** 18 Pa.C.S. § 2702(a)(1) (requiring attempt to cause or causing serious bodily injury to another recklessly under circumstances manifesting extreme indifference), (a)(2) (requiring same for officers) **and** 18 Pa.C.S. § 2702.1 (requiring, *inter alia*, attempt to cause or knowingly causing bodily injury to officer by discharging firearm).

violence[.]" U.S.S.G. § 4B1.1. The guidelines define a "crime of violence" as "any offense under federal or state law, punishable by a imprisonment exceeding one year, that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

In *Stinson*, the Third Circuit held that resisting arrest was a categorical "crime of violence" for sentencing purposes because "it involves conduct that presents a serious potential risk of physical injury to another." *Stinson*, 592 F.3d at 466. The Court reasoned:

> Although the language of Pennsylvania's resisting arrest statute "does not require the aggressive use of force such as striking or kicking of the officer," we have found no decision under Pennsylvania law that affirmed a conviction for resisting arrest based on a defendant's inaction or simply "lying down" or "going limp." Counsel arguing before us on this appeal could cite to none in response to our questions. In fact, there are several cases in which Pennsylvania courts have recognized that resisting arrest does not extend to "minor scuffle[s] incident to an arrest." It is only when a defendant who was "struggling and pulling, trying to get away from [the arresting officer who was physically restraining him]," that he was convicted of resisting arrest, and such cases are rare.

*Id.* (citations omitted). The *Stinson* Court rejected the defendant's argument that under *Thompson*, a Pennsylvania conviction could reflect "active" or "passive" resistance, noting that the defendant in *Thompson* resisted actively by, *inter alia*, startling and striking a police horse.

We need not quarrel with the Third Circuit's interpretation of the Pennsylvania statute as that Court applied an express definition of a "crime

- 33 -

of violence," as well as case law on the scope of that definition.[30] Moreover, the purposes of the RRRI statute, which concerns a defendant's eligibility for a rehabilitative program, and the federal sentencing guidelines scoring of prior convictions are sufficiently distinct such that complete congruity between the definitions of "violent behavior" and a "crime of violence"[31] is unnecessary. **Compare** 61 Pa.C.S. § 4503(3) **and** 18 P.S. § 11.103 (rendering defendant ineligible for RRRI for prior conviction for all Chapter 27 offenses, including simple assault) **with Stinson**, 592 F.3d at 463 (noting record failed to show basis for Pennsylvania simple assault conviction and declining to address whether that conviction constituted crime of violence under federal sentencing guidelines). It suffices for the purposes of this appeal to conclude that we do not find federal case law persuasive authority with respect to Pennsylvania's RRRI statute.

In sum, we conclude the fact of a prior conviction for resisting arrest does not *per se* demonstrate "violent behavior" when determining RRRI eligibility. **See** 61 Pa.C.S. § 4503(1). It follows that resisting arrest is not a

---

[30] **See Stinson**, 592 F.3d at 462 (discussing categorical and modified categorical approaches to determining whether elements of statute meet the definition of "crime of violence.").

[31] The United States Supreme Court, in **Johnson v. United States**, 576 U.S. ___, 2015 WL 2473450 (June 26, 2015), recently held a substantial similar definition of a "violent felony" as "conduct that presents a serious potential risk of physical injury to another" was unconstitutionally vague. **Id.** at ___ (striking 18 U.S.C. § 924(e)(2)(B), known as "residual" clause of Armed Career Criminal Act).

pending "additional charge[ that] would cause the defendant to become ineligible" for a RRRI minimum sentence. **See** 61 Pa.C.S. § 4503(5). As the Commonwealth's sole objection to Appellant's RRRI eligibility was that resisting arrest was a *per se* crime of violence, **see** N.T. Sentencing, at 11-14, we are constrained to reverse the trial court's determination that Appellant was RRRI ineligible.

Judgment of sentence vacated. Case remanded for resentencing consistent with this memorandum. Jurisdiction relinquished.

Judge Panella joins the memorandum.

Judge Olson files a concurring and dissenting memorandum.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/2015

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs

: CRIMINAL ACTION

JEROME GRIER : NO. 1348-11

: SUPERIOR CT. NO. 1429 EDA 2013

Nicolas Casenta, Esquire, Attorney for the Commonwealth.
Trevor Taylor, Esquire, Attorney for Defendant.

## STATEMENT OF THE COURT

Defendant filed a timely appeal on May 15, 2013, following sentencing on April 24, 2013. An appeal having been taken, pursuant to Pa.R.A.P. 1925(a), the following statement is submitted.

The criminal charges in this case arose as a result of a lengthy multi-agency police investigation of the Chester County High Intensity Drug Trafficking Area Group. The investigation included Wiretap Authorization Orders issued by the Superior Court and the compilation of thousands of intercepted communications regarding the purchasing, selling and transferring of drugs and money. This investigation resulted in Defendant's arrest as well as the arrest of fifteen other defendants who were involved in this drug trafficking organization.

Pursuant to the Amended Information, filed September 7, 2012, Defendant was charged with 11 counts of possession with intent to deliver, in violation of 35 Pa.C.S.A. § 780-113(A)(30); 1 count of criminal conspiracy, in violation of 18 Pa.C.S.A. § 903(c); 7 counts of dealing in proceeds of unlawful activities, in violation of 18 Pa.C.S.A. § 5111(a)(1); 1 count of corrupt organizations, in violation of 18 Pa.C.S.A. § 911(b)(3)(4);

5

15 counts of criminal use of a communications facility, in violation of 18 Pa.C.S.A. § 7512(a); 11 counts of possession of a controlled substance, in violation of 35 Pa.C.S.A. § 780-113(A)(16); and 45 counts of criminal solicitation, in violation of 18 Pa.C.S.A. § 902.

In response to Defendant's Habeas Corpus Petition, an Order was entered on September 21, 2012, dismissing the following charges: 2 counts of possession with intent to deliver, 1 count of dealing in proceeds of unlawful activity, 1 count of corrupt organizations, 2 counts of possession of a controlled substance and 2 counts of criminal solicitation. A jury trial was conducted from January 7, 2013 through January 15, 2013. Defendant was found guilty of the following charges on January 15, 2013: 9 counts of possession with intent to deliver; 9 counts of possession of a controlled substance; 42 counts of criminal solicitation; 15 counts of criminal use of a communications facility; 1 count of criminal conspiracy; and 6 counts of dealing in proceeds of unlawful activities. Defendant was sentenced on April 24, 2013 to an aggregate term of imprisonment of 14.75 to 29.5 years.

Defendant did not file a Post-Sentence Motion but did file a Notice of Appeal on May 15, 2013. On that same date this court entered an order directing Defendant's counsel to file a concise statement of errors complained of on appeal no later than twenty-one (21) days after the entry of the order. On May 21, 2013, Defendant filed a Request for Extension of Time to file the statement due to the need to obtain the transcripts. An Order was entered on May 22, 2013 granting Defendant's request for an extension and ordering said statement to be filed no later than June 19, 2013. Defendant filed his concise statement on June 19, 2013 and filed a supplemental statement on June 20, 2013.

2

Defendant alleges ten (10) errors complained of on appeal in his June 19, 2013 statement and one (1) additional error in his June 20, 2013 supplemental statement. This court will address each issue raised, but will group the issues by subject matter in the interest of clarity.

## Superior Court 's Wiretap Authorizing Orders:

Defendant's first issue raised on appeal is that "[t]he Court erred by admitting the Appellant's conversations at trial which were not authorized for interception under the Authorizing Orders of the Superior Court because, the Appellant was a known party and his name was absent from many of the orders." Defendant's second issue raised on appeal is that "[t]he Court erred by allowing evidence related to charges which were not listed in the Authorizing Orders of the Superior Court." These issues were the subject of an Amended Motion to Suppress that was filed on April 3, 2012. After a hearing and a review of the evidence and current state of the law, this court filed an Opinion and Order on October 11, 2012. In accordance with Pa.R.A.P. 1925(a), this court sets forth that the reasons for the denial of Defendant's request for suppression based on his first two issues on appeal are found in that Opinion and Order, which are attached hereto and made a part hereof.

## Drug Experts:

Defendant's third issue raised on appeal is that "[t]he Court erred in allowing the drug experts involved in this case to speculate about the meaning of numerous phrases used in the Appellant's conversations. The definitions provided by the drug experts were not necessary and were unfairly prejudicial to the Appellant." This court disagrees.

3

As discussed above, this case included the compilation of thousands of intercepted communications regarding the purchasing, selling and transferring of drugs and money. Within these communications there were very few times actual references to drugs, weights or money was used. Rather, other terms were used to covertly communicate. In addition, observational evidence was presented by the officers, much of which included video surveillance.

Pennsylvania State Police Trooper Joseph Fanning was found to be an expert in narcotics trafficking and Special Agent Mark Koss of the Drug Enforcement Administration was found to be an expert in narcotics trafficking and narcotics trafficking investigations. (N.T., 1/9/13, p. 59 and N.T., 1/10/13, p. 78). Both experts testified about how numerous certain terms were used within this drug trafficking organization. For example, a "snorter" is someone who uses powdered cocaine, "stack" is a thousand dollars in United States currency and "stepped on" is the adding of adulterant to cocaine. (N.T., 1/9/13, p. 65).

Pursuant to Pa.R.E. 702, "[i]f scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Pennsylvania courts have "determined that in narcotics investigations involving legally intercepted telephone conversations, expert testimony regarding coded and cryptic language relating to criminal activity and sales of controlled substances is permissible under Rule 701." Commonwealth v. Huggins, 68 A.3d 962, 967 (Pa.Super. 2013), citing

4

Commonwealth v. Cuevas, 61 A.3d 292 (Pa.Super. 2013); and Commonwealth v. Doyen, 848 A.2d 1007 (Pa.Super. 2004).

It was proper to allow the experts to interpret the terms used within this drug trafficking organization as interpretation of these terms assisted the jury to understand the evidence. Many of the conversations would have been confusing or incomprehensible without the expert testimony. Accordingly, Defendant's issue on appeal is without merit.

## Severance:

Defendant's fourth issue raised on appeal is that "[t]he Court erred in denying the Appellant's Motion for Severance from the other co-defendants." This court disagrees.

Defendant filed a Motion for Severance on October 22, 2012. Defendant argued that the dismissal of the corrupt organizations charges eliminated "any legal necessity to try the co-defendants together." He further argued that he would be prejudiced by the admission of statements and evidence admissible against the co-defendants, but not admissible against Defendant.

Pa.R.Crim.P. 582(A)(2) provides that "Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Pa.R.Crim.P. 583 states as follows: "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Appellate review of a trial court's denial of a motion for severance is addressed to the sound discretion of the trial court and its decision will not be disturbed absent a manifest abuse of discretion. Commonwealth v. Page, 59 A.3d 1118, 1133 (Pa.Super. 2013),

5

citing Commonwealth v. Mollett, 5 A.3d 291, 305 (Pa.Super. 2010).

A defendant bears the burden of proving that he would be prejudiced by a decision not to sever, and must show real potential for prejudice rather than mere speculation. Commonwealth v. Rivera, 773 A.2d 131, 137 (Pa. 2001), citing Commonwealth v. Uderra, 706 A.2d 334, 339 (Pa. 1998). *See also* Page, 59 A.3d at 1133, citing Mollett, 5 A.3d at 305, *supra.* The United States Supreme Court and the Pennsylvania Supreme Court have both "recognized that joint trials of co-defendants play a crucial role in the criminal justice system." Commonwealth v. Travers, 768 A.2d 845, 847 (Pa. 2001), citing Richardson v. Marsh, 481 U.S. 200, 209, 107 S.Ct. 1702, 1708 (1987); Commonwealth v. Wharton, 607 A.2d 710 (Pa. 1992); Commonwealth v. Jackson, 303 A.2d 924 (Pa. 1973); and Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954), cert. denied, 348 U.S. 875, 75 S.Ct. 112 (1954).

"Where … crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to all defendants, joint rather than separate trials are to be preferred." Commonwealth v. Childress, 680 A.2d 1184, 1187 (Pa.Super. 1996), app. denied, 689 A.2d 231 (Pa. 1997). *See also* Commonwealth v. Lee, 662 A.2d 645, 651 (Pa. 1995), cert. denied, Lee v. Pennsylvania, 517 U.S. 1211, 116 S.Ct. 1831 (1996). "Joint trials are favored when judicial economy will be served by avoiding the expensive and time-consuming duplication of evidence…" Commonwealth v. Birdsong, 24 A.3d 319, 336 (Pa. 2011), citing Commonwealth v. Jones, 668 A.2d 491, 501 (Pa. 1995).

Additionally, "it is well established that 'the law favors a joint trial when criminal conspiracy is charged.'" Commonwealth v. Serrano, 61 A.3d 279, 285 (Pa.Super. 2013), quoting Commonwealth v. Housman, 986 A.2d 822, 835 (Pa. 2009). "'A joint

6

trial of co-defendants in an alleged conspiracy is preferred not only in this Commonwealth, but throughout the United States.'" Serrano, 61 A.3d at 285, quoting Commonwealth v. Colon, 846 A.2d 747, 753 (Pa.Super. 2004).

"'It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand.'" Serrano, 61 A.3d at 285, quoting Colon, 846 A.2d at 753, quoting Richardson v. Marsh, 481 U.S. at 209, 107 S.Ct. at 1708. "'Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.'" Id.

In determining whether to grant a defendant's request for severance, "the court must balance the need to minimize the prejudice that may be caused by the consolidation against the general policy of encouraging judicial economy." Commonwealth v. Presbury, 665 A.2d 825, 828 (Pa.Super. 1995), citing Commonwealth v. Patterson, 546 A.2d 596 (Pa. 1988). *See also* Commonwealth v. Stocker, 622 A.2d 333, 341 (Pa.Super. 1993). "A better chance of acquittal from a separate trial is not sufficient cause to warrant severance." Commonwealth v. Presbury, 665 A.2d at 828, citing Commonwealth v. Katsafanas, 464 A.2d 1270 (Pa.Super. 1983). "Rather, the defenses presented by the various defendants must be 'irreconcilable and exclusive' and 'conflict at the core' before the substantial prejudice burden is met." Commonwealth v. Presbury, 665 A.2d at 828, citing Commonwealth v. Bennie, 508 A.2d 1211, 1215 (Pa.Super. 1986).

7

"[I]t is common in joint trials of multiple defendants that evidence is admitted solely against one defendant." Commonwealth v. McCrae, 832 A.2d 1026, 1037 (Pa. 2003), citing Travers, 768 A.2d at 847. "The general rule in such a circumstance is that an instruction to the jury that it is to consider the evidence only with respect to the defendant against whom it has been properly introduced is sufficient to remove any potential spillover prejudice to the defendant against whom the evidence was not admitted." McCrae, 832 A.2d at 1037, citing Commonwealth v. Bridges, 757 A.2d 859, 883 (Pa. 2000); and Commonwealth v. Travaglia, 661 A.2d 352, 361 (Pa. 1995).

Applying the above standards to the case at hand, it is clear that this court properly denied Defendant's request to sever his case from that of his co-defendants. Defendant and his co-defendants were members of a large drug trafficking organization that transported drugs into Chester County and sold them to numerous buyers in Chester County. Defendant's case was originally joined with 13 other co-defendants as the Commonwealth had filed Rule 582 Notices to join the cases and defendants.[1] All of these co-defendants were identified to law-enforcement officials through the use of the captured phone calls via the wire-tap, video surveillance and controlled drug purchases. Thousands of drug pertinent phone conversations were captured and recorded which expanded the investigation and helped identify more members of the drug trafficking organization.

Due to the numerous co-defendants the court needed to balance the desire to promote judicial economy while also promoting manageable trials. Therefore, it was decided that Defendant would be tried with only two of the co-defendants: Omar

---

[1] The co-defendants were Omar Shelton, Khye Rivas, Philip DiMatteo, Kurtis St.John, Terrence Rokins,

8

Shelton and Khye Rivas.[2] All three were charged with numerous drug offenses and conspiracy to commit possession with intent to deliver with the kingpin of this drug trafficking organization, Mr. DiMatteo. As discussed above, the law favors joint trials when criminal conspiracy is charged. Therefore, Defendant's argument that the dismissal of the corrupt organizations charges eliminated "any legal necessity to try the co-defendants together" is without merit.

This court limited any prejudice to Defendant concerning evidence that was admissible against the co-defendants but not against Defendant by properly instructing the jury. First, the court instructed the jury with regard to evidence concerning co-defendant DiMatteo as follows:

> Ladies and gentlemen, I am going to give you a cautionary instruction before I allow this.
> You are about to hear evidence concerning Phillip DiMatteo and his drug organization. This can be considered only for the purpose of giving you information, background on Mr. DiMatteo for the development of the events leading to the present charges pending against these three individuals, defendants.
> . . .
> The evidence you are about to hear concerning Phillip DiMatteo can be considered only for the purpose of giving you information and background on Mr. DiMatteo for the purpose of development of the events that lead to the present charges on these three defendants and the specific charges against each of them.
> This DiMatteo information is not to be considered for any other purpose. The matters that you will hear are not to be employed by you to form any inferences with respect to these three defendants in those specific Phil DiMatteo matters about which you will hear testimony.
> You must not consider the specific instances regarding Mr. Phillip DiMatteo as evidence against any of these three defendants, Mr.Shelton, Mr. Rivas and Mr. Grier.

Christopher Currey, Jorge Rodriguez, Raemone Carter, Lawrence Brown, Clarence Reid, Kylil London, Michael Pagan and Jon Nelson.
[2] It must be noted that some of the co-defendants had entered guilty pleas prior to that start of this trial and one of the co-defendants died at Chester County Prison.

As you know, if you find any of these defendants guilty of committing any of the crimes for which they are charged, it must be only because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that the defendant committed each and every element of the crimes charged in their specific cases.

So with that cautionary instruction, you may proceed.

(N.T., 1/8/13, pgs. 134-136).

Thereafter, the court gave the following cautionary instruction to the jury immediately before evidence of the recorded phone conversations was presented:

So another thing I have to tell you is we have two separate defendants here on trial. They are being tried together, but they each face independently and separately from each other a series of charges. You must consider each piece of evidence you are about to hear only as it relates to the defendant who's involved in that tape.

If you find something in the tape with one of the defendants that you think is compelling evidence, you are not to apply it in any way or let it give any negative inference in any way towards the other defendant. Each defendant is to be judged by evidence presented, specifically, against that defendant.

And in terms of the tapes, there is, it will be clear which defendant is being discussed. And that's the defendant, only defendant, you can apply that evidence to. Whether you accept the evidence or whether you reject it, it relates to that person.

Again, if you find either of those defendants guilty of committing any of the crimes for which he is charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that that defendant committed each and every element of each crime charged. Thank you.

(N.T., 1/10/13, pgs. 171-172).

In addition, the court gave the following instructions to the jury in the final charge:

Now, members of the jury, I am going to remind you that throughout this charge, when I refer to defendant or defendants as I read the charge, you must apply the instructions separately and independently to each defendant, Mr. Jerome Grier and Mr. Khye Rivas. Although evidence has been presented in one trial, each defendant and his charge must be considered separately and independently from the other.

10

At the outset, when Mr. Kelly was presenting information about the background of Phillip DiMatteo, the individual on whose phone the wire was placed, I cautioned you that the background evidence you heard concerning DiMatteo could be only considered for the development of the events leading to the present charges. It was not to be considered for any other purpose.

I am now restating that cautionary and limiting instruction that still controls. If you find either of these defendants guilty of committing the crimes for which he is charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that the defendant committed each and every element of the crimes charged in these matters.

…

There is a further rule that restricts use by you of the evidence offered to show that each defendant made statements concerning crimes charged against that individual defendant as a statement made before trial may be considered as evidence only against the defendant who made that statement. Thus, you may consider any statements only as evidence against the defendant who made it. You must not, however, consider the statement as evidence against the other defendant. You must not use the statement in any way against him.

(N.T., 1/15/13, pgs. 82-83 and 89-90).

Since jurors are deemed to follow the court's directions, these proper instructions were sufficient to remove any potential spillover prejudice to the defendant against whom the evidence was not admitted. Defendant has failed to establish the burden of prejudice needed to overturn the court's decision to deny his request to sever. Therefore, this issue on appeal is without merit.

**Mistrial:**

Defendant's fifth issue raised on appeal is that "[t]he Court erred in denying a mistrial when the co-defendant Omar Shelton pled guilty following opening arguments. As the cases were joined, Mr. Shelton's plea and absence from the trial raised an inference that Mr. Grier was also guilty."

11

When a motion for a mistrial is presented to the court, the decision on said motion is within the sound discretion of the trial court. Commonwealth v. Greer, 895 A.2d 553, 556 (Pa.Super. 2006), quoting Commonwealth v. Tejeda, 834 A.2d 619, 623 (Pa.Super. 2003). A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive a defendant of a fair and impartial trial. Id. "It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial." Id. On appeal, the standard of review is whether the trial court abused that discretion when deciding whether to deny the mistrial. Id. "An abuse of discretion is more than an error in judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." Id.

This trial started with three co-defendants: Omar Shelton, Khye Rivas and Defendant. A jury was selected on January 7, 2013. On January 8, 2013, trial proceedings were delayed because the attorney for Khye Rivas was in an automobile accident. The jury was informed that someone involved in the case had been in an accident and that proceedings would be delayed. The jury was not informed of the identity of the person in the accident. (N.T., 1/8/13, pgs. 4-5 and 51).

Proceedings started with the jury at 12:05. (N.T., 1/8/13, p. 50). The Commonwealth presented an opening statement. (N.T., 1/8/13, pgs. 52-86). Thereafter, the jury was released for a lunch recess at 12:56. (N.T., 1/8/13, p. 87). Upon resumption of the proceedings, but not in the presence of the jury, Omar Shelton's attorney informed the court that his client and the Commonwealth reached a

12

negotiated guilty plea, subject to the court's approval. (N.T., 1/8/13, pgs. 89 and 93).

The court and counsel discussed the best way to proceed since the jury had already been in service for two days and the trial had just reached the stage of defense opening arguments. Therefore, it was agreed that the trial would not be further delayed by taking the guilty plea at that point. The plea would be taken after the conclusion of the jury proceedings that day, after the jury was released. So as to prevent any confusion or taint of the jury with an opening by Omar Shelton's attorney, he agreed to state that he would defer his opening statement. (N.T., 1/8/13, pgs 89-97).

The jury was reassembled and counsel for Defendant and Khye Rivas proceeded with their opening arguments.[3] (N.T., 1/8/13, pgs. 97-105). Thereafter, the court asked Mr. Shelton's attorney, "Mr. Clark, do you wish to proceed now, or do you wish to reserve your time?" (N.T., 1/8/13, p. 105). He responded, "Judge, I am going to reserve my time. Thank you." Id. The Commonwealth called its first witness and questioned him until about 4:30. The witness was excused to be recalled on direct the following day. (N.T., 1/8/13, p. 167). The jury was excused at 4:36 p.m. (N.T., 1/8/13, p. 169). Thereafter, Omar Shelton entered a negotiated guilty plea.

The following morning, defense counsel presented an oral motion for mistrial. The following exchange took place with counsel and the court:

> We're now starting Day 3 of our trial. And counsel indicated to me in the last minutes of last evening that there would be a motion forthcoming.
> Counsel.
> MS. JONES: Yes, your Honor.
> MR. TAYLOR: For Mr. Grier, motion for mistrial, your Honor.

---

[3] Prior to the start of defense opening statements, the court asked, "Defense counsel, is anyone wishing to proceed at this time with their opening?" (N.T., 1/8/13, p. 97). Defendant's attorney responded, "Yes, your Honor." Id.

13

A significant amount of information that was introduced regarding Omar Shelton is now not going to be moved. It is not relevant to this case. And now the jury has heard the information through Mr. Kelly's opening.

They have been tainted by that information. And we don't believe that Mr. Grier can get a fair trial moving forward because that information has now been heard by the jury.

MS. JONES: Your Honor, on behalf of Mr. Rivas, we also would move for mistrial, judge, for the same reasons that counsel stated.

Your Honor, I think that it is practical to assume as a juror after that information where Mr. Kelly very, specifically, laid out the allegations against the other defendant, that he would leave all of the sudden, just disappear, just seems to me that would be obvious that he pled guilty, judge.

So I think it's more than him being missing. I think the implication is that he has pled guilty.

MR. KELLY: Your Honor, much like the evidence of Mr. DiMatteo's dealings with Kurtis St. John and Chris Curry and Michael Pagan, and that evidence is coming in to show that Phil DiMatteo was in the business of selling drugs. So is the evidence that I spoke about concerning Omar Shelton.

We would ask that I still be able to introduce that evidence concerning the May 11th stop of Omar Shelton when he was found in possession of 184 grams. It's the same type of evidence where the Court's permitting us to use in that section on Phil DiMatteo. I am showing he is a drug user.

THE COURT: Now, I already gave you limits as to what you could put in.

MR. KELLY: You did.

THE COURT: It's cumulative. It's time consuming. And it's not directly on point. It's to give some background.

So because Mr. Shelton is not in this case any longer, and to avoid any problem as alluded to by counsel, no, we're not going to go into anything about Mr. Shelton on the 11th now. That's not going to be part of this trial.

MR. KELLY: Sure.

THE COURT: That could tend to confuse the jury.

MR. KELLY: Okay.

THE COURT: That request is denied.

MR. KELLY: I understand your ruling.

At the same time, there is no prejudice to the defense that would warrant a mistrial because the Court could permit us to introduce that evidence. I understand why you are not. I respect the decision.

14

My point is, though, that my opening remarks have Shelton's involvement and 184 grams on May 11th is not prejudicial. The Court can address it through a limiting instruction. It simply does not warrant the mistrial.

As to the inference that a jury could draw from Mr. Shelton's absence, I submit an inference can just as equally be drawn that the Court dismissed the charges against Mr. Shelton.

So I expressed a concern yesterday about the wording of the Court's instruction to the jury on this matter, that wording be used so as to not –

THE COURT: To go both ways.

MR. KELLY: Yes.

So the court, I understand, will offer an instruction that instructs the jury to make no inference, and I believe that would be sufficient.

THE COURT: Okay. Thank you.

Based upon my review of the situation, the requests for mistrial are denied. I do plan to give a cautionary instruction.

(N.T., 1/9/13, pgs. 6-10).

Once the jury entered the courtroom, the court gave the following thorough cautionary instruction to them:

Good morning. Have a seat. I hope everybody had a good evening.

Ladies and gentlemen, due to unforeseen circumstances, Mr. Omar Shelton will no longer be a part of this case. You are all cautioned that you are not to draw any inferences, negative or positive, against either side, the Commonwealth, or the defendants, nor against either defendant by this change in circumstances.

Also, regarding any information, specifically, referencing Mr. Shelton in the Commonwealth's opening address, any statements such as that should be disregarded and must be disregarded by you as we go forward in this case. They are not to be applied to Mr. Grier or Mr. Rivas in any way.

And as I said to you when we all first met when we were selecting the jury and getting you seated, members of the jury must consider each defendant and charges lodged against him separately.

As I said before, if you find a defendant guilty of committing a crime or the crimes charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that that defendant committed each and every

15

element of the crime charged, and not because of any other reason.

So that's a cautionary instruction. And we're now ready to proceed.

In Commonwealth v. Geho, three co-defendants were being tried together. 302 A.2d 463, 464 (Pa.Super. 1973). "During the course of the trial, two of the defendants changed their pleas to 'guilty' in the presence of the jury. The jury was sequestered and the two codefendants were, thereafter, dropped from the proceedings. The trial proceeded against Girard Geho…. When the jury returned, the trial judge gave cautionary instructions to the jury…. " Id. The Geho court determined that the trial judge adequately instructed the jury that it had the burden of finding the defendant guilty beyond a reasonable doubt and that it could not take the codefendants' guilty pleas into consideration. Id. at 466.

In the case at hand, the jury was not informed that Mr. Shelton had entered a guilty plea. The plea was not announced the presence of the jury. Therefore, Defendant's allegation that "Mr. Shelton's plea and absence from the trial raised an inference that Mr. Grier was also guilty" is without merit. The jury did not know that a guilty plea was entered. As set forth above, many precautionary measures were taken to ensure that the trial continued to flow and the court gave the jury the proper cautionary instruction. Certainly, even if there was a minute suggestion of an inference of guilt present based on the absence of Mr. Shelton, the instruction to the jury erased any inference and prevented any prejudice. Therefore, it was proper for this court to deny Defendant's request for a mistrial.

16

## Admission of Evidence:

Defendant's sixth issue raised on appeal is that "[t]he Court erred in allowing evidence and testimony related to drugs associated with parties who were not on trial, or available and present in the courtroom, and who did not interact directly with the Appellant." Defendant's seventh issue raised on appeal is that "[t]he Court erred in allowing the admission of drugs confiscated from parties who were not on trial and who were not directly related to the Appellant."

It is well settled in Pennsylvania law that admissibility of evidence rests within the sound discretion of the trial court and an evidentiary decision will be reversed only upon a showing that the discretion was abused. Commonwealth v. Chmiel, 889 A.2d 501, 521 (Pa. 2005), cert. denied, 549 A.2d U.S. 848, 127 S.Ct. 101 (2006), citing Commonwealth v. Boczkowski, 846 A.2d 75 (Pa. 2004); and Commonwealth v. Reid, 811 A.2d 530, 550 (Pa. 2002). Further, an erroneous evidentiary ruling by a trial court does not require an appellate court to grant relief where the error was harmless. Chmiel, 889 A.2d at 521, citing Commonwealth v. Young, 748 A.2d 166, 193 (Pa. 1999).

Admissibility of a prior act depends on relevance and probative value. Commonwealth v. Bullock, 948 A.2d 818, 827 (Pa.Super. 2008), quoting Commonwealth v. Grzegorzewski, 945 A.2d 237, 239 (Pa.Super. 2008), app. denied, 954 A.2d 575 (Pa. 2008), quoting Commonwealth v. Drumheller, 808 A.2d 893, 904 (Pa. 2002). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." Id.

17

Evidence admissible under Pa.R.E. 404(b) is not limited to crimes that have been proven beyond a reasonable doubt in court. Commonwealth v. Lockcuff, 813 A.2d 857, 861 (Pa.Super. 2002), app. denied, 825 A.2d 638 (Pa. 2003). "It encompasses both prior *crimes* and prior *wrongs and acts,* the latter of which, by their nature, often lack 'definitive proof.'" Id.

Pennsylvania courts have held that evidence of other crimes is admissible where that evidence forms part of the chain or sequence of events which formed the history of the case or was part of the natural development of the facts. Commonwealth v. Simmons, 662 A.2d 621, 635 (Pa. 1995), citing Commonwealth v. Lark, 543 A.2d 491, 497 (Pa. 1988); and Commonwealth v. Green, 413 A.2d 651, 654 (Pa. 1980).

As discussed above, evidence was presented concerning the large multi-agency drug investigation and the wiretaps as it applied to co-defendant Philip DiMatteo. It was Mr. DiMatteo's phone on which the wiretap orders were approved and recorded. In addition, the pole camera was located outside Mr. DiMatteo's residence. It was proper for the Commonwealth to present evidence concerning the drug trafficking organization and the various roles and workings of those in contact with the organization. Mr. DiMatteo was not on trial with Defendant because he pled guilty prior to this trial. He was not a cooperating witness. In fact, when the Defendants called him to testify at trial, he asserted his Fifth Amendment right to remain silent. (N.T., 1/14/13, pgs. 25-27).

Evidence admitted regarding the drug trafficking organization and those involved was extremely limited to what would help the jury understand the evidence against Defendant and his co-defendant on trial Mr. Rivas. There were thousands of drug

related intercepted phone conversations and multiple drug buys and busts over the lengthy investigation resulting in fourteen co-defendants being charged. Only a fraction of this evidence was admitted at this trial.

This court limited any prejudice to Defendant concerning evidence that was admissible against the co-defendants but not against Defendant by properly instructing the jury. First, the court instructed the jury with regard to evidence concerning co-defendant DiMatteo as follows:

> Ladies and gentlemen, I am going to give you a cautionary instruction before I allow this.
> You are about to hear evidence concerning Phillip DiMatteo and his drug organization. This can be considered only for the purpose of giving you information, background on Mr. DiMatteo for the development of the events leading to the present charges pending against these three individuals, defendants.
> . . .
> The evidence you are about to hear concerning Phillip DiMatteo can be considered only for the purpose of giving you information and background on Mr. DiMatteo for the purpose of development of the events that lead to the present charges on these three defendants and the specific charges against each of them.
> This DiMatteo information is not to be considered for any other purpose. The matters that you will hear are not to be employed by you to form any inferences with respect to these three defendants in those specific Phil DiMatteo matters about which you will hear testimony.
> You must not consider the specific instances regarding Mr. Phillip DiMatteo as evidence against any of these three defendants, Mr. Shelton, Mr. Rivas and Mr. Grier.
> As you know, if you find any of these defendants guilty of committing any of the crimes for which they are charged, it must be only because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that the defendant committed each and every element of the crimes charged in their specific cases.
> So with that cautionary instruction, you may proceed.

(N.T., 1/8/13, pgs. 134-136).

19

Thereafter, the court gave the following cautionary instruction to the jury immediately before evidence of the recorded phone conversations was presented:

> So another thing I have to tell you is we have two separate defendants here on trial. They are being tried together, but they each face independently and separately from each other a series of charges. You must consider each piece of evidence you are about to hear only as it relates to the defendant who's involved in that tape.
>
> If you find something in the tape with one of the defendants that you think is compelling evidence, you are not to apply it in any way or let it give any negative inference in any way towards the other defendant. Each defendant is to be judged by evidence presented, specifically, against that defendant.
>
> And in terms of the tapes, there is, it will be clear which defendant is being discussed. And that's the defendant, only defendant, you can apply that evidence to. Whether you accept the evidence or whether you reject it, it relates to that person.
>
> Again, if you find either of those defendants guilty of committing any of the crimes for which he is charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that that defendant committed each and every element of each crime charged. Thank you.

(N.T., 1/10/13, pgs. 171-172).

Just prior to the jury momentarily seeing the drugs which were confiscated from a codefendant not on trial, but intended to be delivered to Mr. DiMatteo, the court gave the jury the following cautionary instruction:

> Ladies and gentlemen of the jury, again, I am going to give you a cautionary instruction.
>
> As you know, you were given an introduction by Mr. Kelly about the stages of his presentation. And I am allowing in some evidence concerning the Phillip DiMatteo operation only to give you information and background on Mr. DiMatteo, background that ties in to why there was a wire, and for the development of the events leading to present charges against these two defendants.
>
> You are going to be presented with some evidence shortly that is not to be considered for any specific charge against these defendants. And it is only for the background that I have just described, and development of the events leading to the present charges for which I am allowing it.

20

You are not to use the evidence that you are about to be presented with by you to form any inference with respect to these defendants, Mr. Rivas and Mr. Grier, on the specific charges to which they are before you.

You must not consider the specific information regarding the Phil DiMatteo matters, as evidence against, or anyone else involved in the Phil DiMatteo matters who are not defendants here, you can't use any specific instances for those others against any of the defendants, not Mr. Rivas or not Mr. Grier.

By the way, if you find either of these two defendants guilty of committing crimes for which they are charged, it must be because the Commonwealth has demonstrated at the conclusion of the case by evidence proving beyond a reasonable doubt that the defendant committed each and every element of any crimes charged.

Proceed.

(N.T., 1/9/13, pgs. 191-193).

In addition, the court gave the following instructions to the jury in the final charge:

Now, members of the jury, I am going to remind you that throughout this charge, when I refer to defendant or defendants as I read the charge, you must apply the instructions separately and independently to each defendant, Mr. Jerome Grier and Mr. Khye Rivas. Although evidence has been presented in one trial, each defendant and his charge must be considered separately and independently from the other.

At the outset, when Mr. Kelly was presenting information about the background of Phillip DiMatteo, the individual on whose phone the wire was placed, I cautioned you that the background evidence you heard concerning DiMatteo could be only considered for the development of the events leading to the present charges. It was not to be considered for any other purpose.

I am now restating that cautionary and limiting instruction that still controls. If you find either of these defendants guilty of committing the crimes for which he is charged, it must be because the Commonwealth has demonstrated by evidence proving beyond a reasonable doubt that the defendant committed each and every element of the crimes charged in these matters.

...

There is a further rule that restricts use by you of the evidence offered to show that each defendant made statements concerning crimes charged against that individual defendant as a statement made before trial may be considered as evidence only

against the defendant who made that statement. Thus, you may consider any statements only as evidence against the defendant who made it. You must not, however, consider the statement as evidence against the other defendant. You must not use the statement in any way against him.

(N.T., 1/15/13, pgs. 82-83 and 89-90).

Since jurors are deemed to follow the court's directions, these proper instructions were sufficient to remove any potential spillover prejudice to the defendant against whom the evidence was not admitted. The evidence was properly admitted for the limited purpose of establishing the chain or sequence of events which formed the history of the case and the natural development of the facts. It assisted the triers of fact to understand the workings of the drug trafficking organization and Defendant's role within it. Accordingly, Defendant's issues on appeal regarding the admissibility of said evidence are without merit.

## Closing Argument:

Defendant's eighth issue raised on appeal is that "[t]he Court erred in giving an instruction to the jury to disregard a portion of Defense Counsel's closing argument following the Commonwealth's misquotation and untimely objection after Defense Counsel's closing argument."

Following defense counsel's closing argument, the Commonwealth voiced an objection at sidebar. (N.T., 1/15/13, pgs. 34-38). The objection was that defense counsel argued to the jury that "the police never told the jury that anyone told them that they bought drugs off of Grier. That's simply inadmissible hearsay. We have no obligation to do that. I ask for a jury instruction on that." (N.T., 1/15/13, p. 35).

During closing argument, defense counsel stated, "So where's the people that

22

bought it? Coatesville is 15,000 people. It might sound like a lot, but that's a pretty small town, in the general sense. Nobody, nobody, no pictures. And in this day of red light cameras, we don't even have a photo of any kind of exchange. Coatesville is a pretty concentrated place. There is information out there. The trooper even told you, hey, I got experience going undercover in Coatesville. Nobody said they bought anything." (N.T., 1/15/13, p. 27). It is the final sentence, "Nobody said they bought anything," that appears to the objected to statement.

First, Defendant's allegation that the Commonwealth's objection was untimely is without merit. Immediately upon conclusion of defense counsel's closing argument, the Commonwealth asked to speak to the court and a sidebar conversation ensued. Pennsylvania law has held that when closing arguments are recorded, objections at the close thereof are considered timely. Commonwealth v. Raffensberger, 435 A.2d 864, 867 (Pa.Super. 1981), citing Commonwealth v. Gilman, 368 A.2d 253 (Pa. 1977); Commonwealth v. Allessie, 406 A.2d 1068 (Pa.Super. 1979). In this trial closing arguments were recorded and could have been read back by the court reporter, if requested.

Second, Defendant's argument on appeal that the Commonwealth misquoted his argument and the Court erred by giving a curative instruction is also without merit based upon the nature of the court's instruction to the jury. The jury was not told the words or interpretation of the words that were argued. Rather, the court said that "**there is a belief** that Mr. Taylor, in his argument, said that the police never told you that anyone said that they bought drugs off of Mr. Grier. What Mr. Taylor said **is subject to your recollection, not anyone else's**. But if you do recall that, I am instructing you to

23

disregard it. Because such evidence would be impermissible hearsay. And the Commonwealth is aware of that, and you should not draw any adverse inferences against the Commonwealth from the lack of an attempt to present such impermissible hearsay. Thank You." (emphasis added). (N.T., 1/15/13, pgs. 38-39).

This instruction placed the recollection and interpretation of the language used by defense counsel on the trier of fact and properly instructed the jury regarding hearsay. Accordingly, this issue on appeal should be denied.

## Mandatory Minimum Sentence:

Defendant's ninth issue raised on appeal is that "[t]he Court erred in finding that the Appellant possessed ten or more grams of cocaine with intent to distribute that cocaine. Therefore, the Court erred in sentencing the Appellant to a mandatory term of imprisonment for possession with intent to distribute cocaine." We disagree. On counts 1, 2, 3, 4, 5, 6, 7 and 9, all for possession with the intent to deliver in violation of 35 Pa.C.S.A. § 780-113(a)(30), Defendant was properly given the mandatory minimum sentence of 5 years imprisonment.

At the sentencing hearing, Pennsylvania State Police Trooper Joseph Fanning testified about the nine incidents on which Defendant was found guilty of possession with intent to deliver.[4] The parties stipulated that for the purposes of sentencing Trooper Fanning was qualified as an expert witness to render opinions in the field of narcotics trafficking. (N.T., 4/24/13, p. 27).

Trooper Fanning testified that under the circumstances of this case, a half ounce of cocaine (14 grams) would sell for approximately $500 and an ounce of cocaine (28

---

[4] Trooper Fanning's testimony can be found at N.T., 4/24/13, pgs. 26-59.

24

grams) would sell for $1,000 or more. (N.T., 4/24/13, pgs. 32-37). The expert testified regarding the incident dates on the verdict slip and the corresponding recorded phone calls to establish the amount of drugs possessed and sold based on the amount of money transferring between Defendant and Mr. DiMatteo.

For example, regarding Count 1, on March 23, 2010 Defendant contacted Mr. DiMatteo for cocaine and on March 24, 2010 they had a follow-up conversation in which Defendant was bringing $1,200 to DiMatteo for the cocaine he received the prior day. Based on the amount of money, the expert reasoned that Defendant had been given and sold a minimum of an ounce or 28 grams of cocaine. (N.T., 4/24/13, pgs. 32-32).

Based on this transaction, it was proper for the court to sentence Defendant to the mandatory minimum incarceration sentence which is justified for possessing ten or more grams of cocaine with intent to distribute. Pursuant to 18 Pa.C.S.A. § 7508(a)(3)(ii), due to Defendant's prior conviction for a drug trafficking offense, the mandatory minimum sentence of 5 years incarceration was warranted.

Trooper Fanning also testified regarding the other incident dates on which Defendant was found guilty and the basis for his opinion regarding the amount of drugs Defendant possessed with intent to deliver. He testified that count 2, the April 14, 2010 incident, involved a half ounce of cocaine. (N.T., 4/24/13, pgs. 35-36). Count 3, the April 24, 2010 incident, involved more than a half an ounce of cocaine. (N.T., 4/24/13, pgs. 36-38). Count 4, the May 3, 2010 incident, involved an ounce of cocaine. (N.T., 4/24/13, pgs. 38-39). Count 5, the May 4, 2010 incident, involved an ounce of cocaine. (N.T., 4/24/13, pgs. 39-40). Count 6, the May 5, 2010 incident, involved an ounce of cocaine. (N.T., 4/24/13, pgs. 40-43). Count 7, the May 7, 2010 incident, involved an

25

ounce of cocaine. (N.T., 4/24/13, pgs. 43-45). Count 9, the May 20, 2010 incident involved an ounce of cocaine. (N.T., 4/24/13, pgs. 49-51).

Accordingly, Defendant faced mandatory minimum sentences on all these counts of his possession with intent to deliver convictions. This court imposed the mandatory minimum sentence on counts 1, 2, 3, 4, 5, 6, 7 and 9. Defendant's allegation that this Court erred in finding that he possessed ten or more grams of cocaine with intent to distribute is not supported by the evidence presented at trial and at sentencing. The mandatory minimum sentence imposed was based on the evidence and was proper under Pennsylvania law.

## Recidivism Risk Reduction Initiative:

Defendant's tenth issue raised on appeal is that "[t]he Court erred in denying the Appellant a (RRRI) Recidivism Risk Reduction Initiative minimum sentence based on a prima facie finding on the charge of resisting arrest, a charge which is not an ineligible offense under the RRRI statue (sic)."

Defendant is correct that resisting arrest is not a specifically listed ineligible offense in the RRRI statute. However, this court determined that Defendant was an ineligible offender for RRRI since he demonstrated a history of past violent behavior under 61 Pa.C.S.A. § 4503 due to his resisting arrest charge. Counsel was unable to provide, and this court was unable to find, any Pennsylvania case law on this exact issue. Nonetheless, the United States Court of Appeals, Third Circuit, has issued four opinions holding that a Pennsylvania conviction for resisting arrest qualified as a crime of violence. U.S. v. Stinson, 592 F.3d 460 (3rd Cir. 2010), cert. denied, 131 S.Ct. 114 (2010); U.S. v. Garrett, 504 Fed.App. 132 (3rd Cir. 2012); U.S. v. Thomas, 435

26

Fed.Appx. 117 (3rd Cir. 2011), cert. denied 132 S.Ct. 359 (2011); and <u>U.S. v. Beason</u>, 238 Fed.Appx. 854 (3rd Cir. 2007), cert. denied 128 S.Ct. 2049 (2008).

These courts were examining Pennsylvania's resisting arrest statute as applied under the career offenders sentencing guidelines. While this is not the current issue before the court, it does give guidance as to whether a resisting arrest charge would make a defendant ineligible for RRRI as demonstrating a history of past violent behavior.

This court also specifically examined the language of the Pennsylvania resisting arrest statute which states as follows: "A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104.

A convicted offender would have created a substantial risk of bodily injury or employed means justifying or requiring substantial force to overcome the resistance. As the Standard Criminal Jury Instructions sets forth a person cannot be found guilty of this crime if he merely tried to run away from, scuffled with or argued with an officer, public servant or other official. P.S.S.C.J.I. 15.5104.

Therefore, this court concluded that someone who resisted arrest demonstrated a history of past violent behavior and would be an ineligible offender for RRRI.

**Supplemental Issue:**

Defendant filed a Notice of Appeal on May 15, 2013. On that same date this court entered an order directing Defendant's counsel to file a concise statement of errors

complained of on appeal no later than twenty-one (21) days after the entry of the order. On May 21, 2013, Defendant filed a Request for Extension of Time to file the statement due to the need to obtain the transcripts. An Order was entered on May 22, 2013 granting Defendant's request for an extension and ordering said statement to be filed no later than June 19, 2013. The order specifically states that "[a]ny issue not properly included in the Statement timely filed and served shall be deemed waived." Defendant's concise statement, filed on June 19, 2013, was timely. However, his supplemental statement, filed on June 20, 2013, was untimely. Accordingly, the supplemental issue raised in the untimely statement is deemed waived.

BY THE COURT:

_Phyllis Streitel_

PHYLLIS R. STREITEL, J.

DATE: _August 28, 2013_

28

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs : CRIMINAL ACTION

JEROME GRIER
DEFENDANT : NO. 1348 -11

Stephen Kelly, Esquire, on behalf of the Commonwealth.
Trevor Taylor, Esquire, on behalf of Defendant.

## OPINION

On January 18, 2012, Defendant filed a Motion to Suppress. Said motion was replaced later by an Amended Motion to Suppress Evidence, filed April 3, 2012. A hearing was held on March 19, 2012. Defendant's Memorandum of Law was filed April 2, 2012 and the Commonwealth's Memorandum of Law was filed April 13, 2012. Defendant's Motion requests suppression of all Wiretap Act evidence generated in this matter.

On March 19, 2010, the Chester County District Attorney's Office presented an Application for an Order Authorizing the Interception of Electronic and Wire Communications to the Pennsylvania Superior Court, requesting to intercept electronic and wire communications of co-defendant, Phillip Dimatteo, who utilizes Sprint Nextel Corporation telephone number 215-239-0542 and Nextel Direct Connect number 168*651*3330. As required, an Affidavit in Support of Application was attached, in addition to other Exhibits. The Honorable Paula Francisco Ott reviewed the Application and supporting documentation and determined that probable cause existed in support of the request and on March 19, 2010 executed an Order Authorizing the Interception of Electronic and Wire Communications.

Copies Served:

10/12/12                                    1

Interception of these electronic and wire communications began on March 22, 2010. Pursuant to the Authorization Order, the Chester County District Attorney's Office submitted Progress Reports to the Superior Court.

On April 20, 2010, the Chester County District Attorney's Office presented to Superior Court Judge Ott an Application for an Order Extending the Authorization for the Interception of Electronic and Wire Communications of co-defendant Dimatteo who utilizes Sprint Nextel Corporation telephone number 215-239-0542 and Nextel Direct Connect number 168*651*3330. As required, an Affidavit in Support of Application was attached, in addition to other Exhibits. The Honorable Paula Francisco Ott reviewed the Application and supporting documentation and determined that probable cause existed in support of the request and on April 20, 2010 executed an Order Extending the Authorization of the Interception of Electronic and Wire Communications.

Interception of these electronic and wire communications continued and the Chester County District Attorney's Office continued to submit Progress Reports to the Superior Court. Interception was terminated on May 19, 2010.

On May 18, 2010, the Chester County District Attorney's Office presented an Application for an Order Authorizing the Interception of Electronic and Wire Communications to the Pennsylvania Superior Court, requesting to intercept electronic and wire communications of co-defendant Dimatteo, who utilizes Sprint Nextel Corporation telephone number 610-350-5789 and Nextel Direct Connect number 168*663*15526. As required, an Affidavit in Support of Application was attached, in addition to other Exhibits. The Honorable Paula Francisco Ott reviewed the Application and supporting documentation and determined that probable cause existed in support of

2

the request and on May 18, 2010 executed an Order Authorizing the Interception of Electronic and Wire Communications.

Interception of these electronic and wire communications began on May 19, 2010. Pursuant to the Authorization Order, the Chester County District Attorney's Office submitted Process Reports to the Superior Court. Interception was terminated on June 8, 2010.

The wiretap applications and Orders were issued by the Superior Court pursuant to the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5701, etc. seq. Pursuant to the act, "[a]ny aggrieved person who is a party to any proceeding in any court, board or agency of this Commonwealth may move to exclude the contents of any wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds...." 18 Pa.C.S.A. § 5721.1 (b). The grounds on which a motion to exclude may be based are as follows:

> (1) Unless intercepted pursuant to an exception set forth insection 5704 (relating to exceptions to prohibition of interception and disclosure of communications), the interception was made without prior procurement of an order of authorization under section 5712 (relating to issuance of order and effect) or an order of approval under section 5713(a) (relating to emergency situations) or 5713.1(b) (relating to emergency hostage and barricade situations).
>
> (2) The order of authorization issued under section 5712 or the order of approval issued under section 5713(a) or 5713.1(b) was not supported by probable cause with respect to the matters set forth in section 5710(a)(1) and (2) (relating to grounds for entry of order).
>
> (3) The order of authorization issued under section 5712 is materially insufficient on its face.
>
> (4) The interception materially deviated from the requirements of the order of authorization.

3

(5) With respect to interceptions pursuant to section 5704(2), the consent to the interception was coerced by the Commonwealth.

(6) Where required pursuant to section 5704(2)(iv), the interception was made without prior procurement of a court order, or without probable cause.

18 Pa.C.S.A. § 5721.1(b).

When considering a motion to exclude under subsection (b)(2) alleging that the authorization order was not supported by probable cause, the court shall examine both the written application under section 5710(a) and all matters that were presented to the judge under section 5710(b). 18 Pa.C.S.A. § 5721.1(c)(2).

A defendant shall bear the burden of proving by a preponderance of the evidence the grounds for exclusion asserted under 18 Pa.C.S.A. § 5721.1 subsection (b)(3) and (4). 18 Pa.C.S.A. § 5721.1(c)(3). The Commonwealth shall bear the burden of proof by a preponderance of the evidence with respect to exclusion claims under 18 Pa.C.S.A. § 5721.1 subsection (b)(1), (2) and (5). 18 Pa.C.S.A. § 5721.1(c)(4). With respect to exclusion claims under 18 Pa.C.S.A. § 5721.1 subsection (b)(6), the defendant shall have the initial burden of demonstrating by a preponderance of the evidence that the interception took place in his home. Once he meets this burden, the burden shall shift to the Commonwealth to demonstrate by a preponderance of the evidence that the interception was in accordance with section 5704(2)(iv). 18 Pa.C.S.A. § 5721.1(c)(5).

Defendant sets forth the following arguments in support of his request to suppress the evidence of the electronic and wire communications. First, Defendant argues that the Authorization Order is not supported by probable cause because the

4

Commonwealth presented information it knew to be false and misleading. Therefore, Defendant suggests that a Franks hearing needs to be held.

Second, Defendant alleges that the Commonwealth materially deviated from the Orders of Authorization and Extension as follows: There was probable cause that the wiretap of co-defendant DiMatteo would capture communications with Defendant, yet Defendant's name was omitted from orders; and Defendant is charged with offenses which are not included in the Superior Court Orders. Defendant argues that these two reasons represent a material deviation from the Authorization Orders and the wiretap evidence should be excluded.

We shall address each of Defendant's arguments. This court disagrees with Defendant's arguments that the Order of Authorization was not supported by probable cause. As a matter of fact, there is overwhelming evidence that the cell phones in question had been and would continue to be utilized by co-defendant Dimatteo for drug activities. Three experienced drug investigators executed the affidavit outlining their investigation into the Rodriguez-Cruz Drug Trafficking Organization and the significant role Dimatteo is alleged to have played in selling drugs in Chester County. This included calls confidential informants placed to Dimatteo on the 215-239-0542 phone number to set up and make arrangements for the drug buys.

The evidence presented also included the analysis of the data obtained from the pen register and trap and trace device records authorized by Federal Magistrate Judge Linda Caracappa of the Eastern District of Pennsylvania. Once the first wiretap was in place and the calls were being intercepted, the evidence confirmed the nature of the calls and that the phone was being used for drug related purposes, which supported the

5

affidavit in support of the extension of the wiretap as well as the affidavit in support of the wiretap on the phone with the number 610-350-5789. Therefore, Defendant's argument that the Order of Authorization was not supported by probable cause must fail.

This court also disagrees with Defendant's argument that he is entitled to a Franks hearing because the affidavits in support of the wiretap applications were based on false statements or made with reckless disregard for the truth and that these statements should be set aside and the affidavit should be reviewed without those statements.

The United States Supreme Court has held that, where a "defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Franks v. Delaware, 438 U.S. 154,155-156, 98 S.Ct. 2674, 2676 (1978). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id.

In the case at hand, Defendant has failed to make a substantial preliminary showing that a false statement was included in the warrant affidavits. Defendant alleges that "the Commonwealth presented information it knew to be false and

6

misleading within its various Affidavits and requests that a hearing ... [be] held in accordance with the holding in Franks v. Delaware, 438 U.S. 154 (1978)." However, he does not set forth that information is alleged to be false and misleading. Defendant fails to direct the court to the statements that need to be examined. He has, therefore, failed to meet his preliminary burden, he is not entitled to a Franks hearing and the claim must be denied.

Defendant's next argument is that the Commonwealth violated 18 Pa.C.S.A. § 5721(b) by materially deviating from the Orders of Authorization and Extension. He argues that the evidence obtained as a result of these orders should be suppressed. Defendant argues that there was probable cause that the wiretap of co-defendant DiMatteo would capture communications with Defendant, therefore, he was a "known" person whose communications would be intercepted under 18 Pa.C.S.A. § 5712(a)(2). Defendant claims that his name being omitted from all Orders of Authorization represents a material deviation from the Orders under 18 Pa.C.S.A. § 5721.1(b)(3)(4).

In support of this allegation, Defendant sets forth the following argument: "A straight forward reading of the Order of the Superior Court excludes all those who qualify as known. Under the doctrine of Inclusio unius est exclusion alterius – the inclusion of one is the exclusion of another – since the Superior Court authorized the wiretap of Mr. DiMatteo and others unknown, the Superior Court therefore did not permit the wiretap of those known." This court finds Defendant's argument to be illogical under the circumstances of this case.

Yes, the Superior court was advised about the information the drug task force had compiled about the drug organization as was known to them at the time the

7

Application for the wiretap was submitted. It was all of these known factors and individual's actions that created the probable cause for the authorization for the wiretap and electronic communications order. The facts established that co-defendant Dimatteo utilized that phone in question to set up drug purchases and distributions. The goal was to discover the process by which the drugs were moved and to discover the source of the drugs to Dimatteo and the individuals used to distribute the drugs.

The Superior Court ordered the Commonwealth to submit frequent progress reports that continued to update the court with the details of the investigation and the individuals involved. After receiving the progress reports, request for an extension and request for a new order on the new phone number, the court granted both the extension and new order request, knowing the Commonwealth was gathering evidence and building its case against Defendant, Dimatteo and many others, while at the same time trying to identify the unknown individuals in the organization. There is no requirement that each and every person that may contact Dimatteo on the number in question or be contacted by Dimateo on the number in question be listed in the Order.

Defendant alleges that the Commonwealth materially deviated from the Orders of Authorization and Extension by charging Defendant with offenses which are not included in the Superior Court Orders. Defendant argues that the court in "Hashem did not permit an individual to be charged with a crime which was not authorized under the Order, or subsequently approved by the authorizing court." However, what the Pennsylvania Supreme Court in Commonwealth v. Hashem actually held was that "the Commonwealth's failure to obtain permission to disclose communications intercepted under Wiretap Act for use in prosecution of crime different than targeted crime, prior to

8

disclosing contents of communications, irreversibly tainted conviction." 584 A.2d 1378, 1381-1382 (Pa. 1991). Contrary to Defendant's claim, the Hashem court did not hold that an individual can only be charged with crimes set for in the authorization order or subsequently approved by the authorizing court. The focus of the Hashem opinion was the lack of authorization to disclose the contents of the wiretap and the timing of said disclosure.[1]

Accordingly, this court finds that the Commonwealth did not violate 18 Pa.C.S.A. § 5721(b) by materially deviating from the Orders of Authorization and Extension. Based upon the foregoing, the following Order is entered:

### ORDER

AND NOW, this ___11___ day of October, 2012, upon consideration of Defendant's Amended Motion to Suppress Evidence, filed April 3, 2012, the hearing held on March 19, 2012, Defendant's Memorandum of Law, filed April 2, 2012 and the Commonwealth's Memorandum of Law, filed April 13, 2012, it is hereby ORDERED and DECREED that Defendant's request to suppress evidence is DENIED and the motion is DISMISSED.

BY THE COURT:

_____
PHYLLIS R. STREITEL          J.

---

[1] It must also be noted that the Hashem case interpreted the Wiretap Act before it was amended to include the exclusive remedy provision. Commonwealth v. Steward, 918 A.2d 758, 761, fn 6, (Pa.Super. 2007), app. denied, 945 A.2d 170 (Pa. 2008), citing Commonwealth v. Donahue, 630 A.2d 1238, 1248, fn 11, (Pa.Super. 1993).